WESTERN WORLD INSURANCE COMPANY, Inc. *v.*
Charles BRANCH and East Arkansas
Youth Services, Inc.

97-747                                              965 S.W.2d 760

Supreme Court of Arkansas
Opinion delivered March 26, 1998

*Wright, Lindsey & Jennings*, by: *Patricia A. Sievers* and *J. Charles Dougherty*, for appellant.

*Bill W. Bristow*, for appellee Charles Branch.

*William P. Rainey*, for appellee East Arkansas Youth Services, Inc.

ANNABELLE CLINTON IMBER, Justice. The issue in this case is whether a sexual attack that occurred at East Arkansas Youth Services, Incorporated ("Youth Services"), is covered by an insurance policy issued by Western World Insurance Company ("Western World"). The trial court entered a declaratory judgment in favor of Youth Services, and Western World appeals. We reverse.

Youth Services is a temporary residential facility for nonviolent adolescents. Jacqueline Branch Daves was a resident of Youth Services at their facility in Crittenden County when she was allegedly raped by another resident. Ms. Daves and her father, Charles Branch, subsequently filed a lawsuit against Youth Services and its insurance carrier, Western World, alleging that Youth Services' negligent supervision and deficient safety measures were the proximate cause of the rape.

Youth Services filed a cross-claim asking for a declaratory judgment that Western World was obligated to provide liability coverage and to defend the negligence action pursuant to a general and professional liability insurance policy which was in effect at the time of the alleged rape. In response, Western World claimed that it was exempt from both obligations pursuant to a "Sexual Action Exclusion" provision which provided that:

> It is agreed that no coverage exists (and therefore no duty to defend exists) for claims or suits brought against any insured for damages arising from sexual action. Sexual action includes, but is not limited to, any behavior with sexual connotation or purpose — whether performed for sexual gratification, discrimination, intimidation, coercion or other reason.

> It is further agreed this exclusion applies even if an alleged cause of the damages was the insured's negligent hiring, placement, training, supervision, act, error or omission.

On April 15, 1997, the trial court entered declaratory judgment in favor of Youth Services. In its order, the trial court found that the exclusion applied only to sexual acts committed by Youth Services' employees, and not to sexual acts committed by its residents. Accordingly, the trial court declared that Western World was required to provide liability coverage and defend the negli-

gence action filed by Daves and Branch. From this order, Western World filed a timely notice of appeal.

### I. Interpretation of the Exclusion

■ ■ For its first argument on appeal, Western World contends that the trial court erred when it construed the language of the sexual-action exclusion provision to exclude coverage for sexual acts committed by Youth Services' employees, but not to exclude coverage for sexual acts committed by its residents. Our law regarding the construction of an insurance contract is well settled. In *Southern Farm Bureau Cas. Ins. Co. v. Williams*, 260 Ark. 659, 543 S.W.2d 467 (1976), we said that:

> The terms of an insurance contract are not to be rewritten under the rule of strict construction against the company issuing it so as to bind the insurer to a risk which is plainly excluded and for which it was not paid.

Thus, if the provision is unambiguous, and only one reasonable interpretation is possible, we will give effect to the plain language of the policy without resorting to the rules of construction. *See Unigard Sec. Ins. Co. v. Murphy Oil U.S.A., Inc.*, 331 Ark. 211, 962 S.W.2d 735 (1998); *Smith v. Shelter Mut. Ins. Co.*, 327 Ark. 208, 937 S.W.2d 180 (1997). If, however, the policy language is ambiguous, and thus susceptible to more than one reasonable interpretation, we will construe the policy liberally in favor of the insured and strictly against the insurer. *Unigard, supra*; *State Farm Fire & Cas. Co. v. Midgett*, 319 Ark. 435, 892 S.W.2d 469 (1995); *Keller v. Safeco Ins. Co.*, 317 Ark. 308, 877 S.W.2d 90 (1994). Finally, whether the language of the policy is ambiguous is a question of law to be resolved by the court. *Unigard, supra*.

■ We hold that the language of the sexual-action exclusion is unambiguous, and thus we must give effect to its plain meaning without resorting to the rules of construction. The definition of "sexual action" contained in the exclusion is written very broadly to include "any behavior with sexual connotation or purpose." The exclusion then provides several examples of why this conduct may occur, but specifically says "not limited to" and refers to "other reason[s]," thus indicating that the improper sex-

ual acts may occur for reasons other than those listed in the definition. Moreover, the last sentence broadens the exclusion by clarifying that Western World will also not be liable if Youth Services is sued in a direct action for negligence, or under a theory of imputed negligence such as respondeat superior. For these reasons, we hold that the sexual-action exclusion unambiguously excludes from coverage liability that results from sexual acts committed by Youth Services' employees or residents. Accordingly, we reverse the trial court's order of declaratory judgment.

█ In reaching this conclusion, we are not unmindful of Youth Services' argument that the exclusion is in conflict with two provisions in the insurance policy. This argument, however, was not raised below nor was it ruled upon by the trial court. Hence, the argument is procedurally barred as it is raised for the first time on appeal. *Wilson v. Rebsamen Ins., Inc.*, 330 Ark. 687, 957 S.W.2d 678 (1997); *Slaton v. Slaton*, 330 Ark. 287, 956 S.W.2d 150 (1997).

## II. Public Policy

██ The next issue is whether the exclusion is void as a matter of public policy because the phrase "sexual action" is vague and overbroad. It is well settled that an insurer may contract with its insured upon whatever terms the parties agree so long as the terms are not contrary to a statute or public policy. *Pardon v. Southern Farm Bureau Cas. Ins.*, 315 Ark. 537, 868 S.W.2d 468 (1994); *Shelter v. Gen. Ins. Co. v. Williams*, 315 Ark. 409, 867 S.W.2d 457 (1993); *Guaranty Nat'l Ins. v. Denver Roller Inc.*, 313 Ark. 128, 854 S.W.2d 312 (1993). To determine the public policy of this state, we look to our statutes and constitution, *Guaranty Nat'l Ins., supra*; *Sterling Drug, Inc. v. Oxford*, 294 Ark. 239, 743 S.W.2d 380 (1988), because public policy is declared by the General Assembly, and not this court. *Davis v. Ross Prod. Co.*, 322 Ark. 532, 910 S.W.2d 209 (1995); *Nabholtz Const. Corp. v. Graham*, 319 Ark. 396, 892 S.W.2d 456 (1995).

█ On appeal, Youth Services has failed to draw our attention to a single statutory or constitutional provision that establishes a public policy prohibiting sexual-action exclusion provisions.

Instead, Western World has cited cases from other jurisdictions that purportedly stand for the proposition that such exclusions do not violate public policy. In *Smith v. Shelter Mutual Insurance Co.*, 327 Ark. 208, 937 S.W.2d 180 (1997), we refused to consider cases from other jurisdictions once we concluded that the insurance provision in question did not violate the public policy of this state. Youth Services has simply failed to demonstrate how the sexual-action provision violates Arkansas public policy. Accordingly, we find no merit to this argument.

Reversed.