On June 24, 1997, Clara Aristizabal McCauley filed a complaint against Carl Estes and Estes Realty Company, seeking damages based on allegations of invasion of privacy, intentional infliction of emotional distress, negligence, wantonness, and recklessness. Carl Estes is apparently the owner and operator of Estes Realty Company. The defendants filed answers denying the material allegations in McCauley's complaint. The trial court allowed Alfa Mutual Insurance Company, the provider of Carl Estes's homeowner's insurance, to intervene.
On February 3, 1998, Alfa moved for a summary judgment, arguing in its motion that it was not required to defend or to indemnify Estes in this action because the policy contained an exclusion for bodily injury or property damage "which is the result of willful or malicious acts of an insured." Alfa alleged that Estes's actions fell within that exclusion.
McCauley filed an opposition to Alfa's motion for a summary judgment, arguing that she had alleged negligence in her complaint and that she had not alleged that Estes had intended to cause her harm. On April 30, 1998, the trial court entered an order holding that Alfa had no duty to defend or to indemnify Estes in this matter; the court certified that judgment as final pursuant to Rule 54(b), Ala. R. Civ. P. McCauley appealed to the Supreme Court of Alabama, which transferred the appeal to this court, pursuant to § 12-2-7, Ala. Code 1975.
A motion for summary judgment is properly granted where no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Chatham v. CSXTransp., Inc., 613 So.2d 341, 343 (Ala. 1993). The evidence must be viewed in a light most favorable to the nonmoving party, and all reasonable doubts concerning the existence of a genuine issue of material fact must be resolved in favor of the nonmovant. Id. After the moving party makes its prima facie showing, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of material fact. Id. The nonmoving party is required to present "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved."West v. Founders Life Assurance Co. of Florida 547 So.2d 870, 871
(Ala. 1989).
The facts of this case are as follows: McCauley worked part-time as a secretary for Estes at Estes Realty Company. In addition to her secretarial duties, McCauley performed housecleaning duties at the realty company and for Estes in his home. Estes's home is located less than one block from the realty company's office.
On the morning of March 4, 1997, McCauley telephoned Estes at his home to ask if *Page 721 
she could shower and change clothes at his home that afternoon before she left to attend a real estate class. Estes gave McCauley permission to do so. McCauley had showered at Estes's house on two other occasions.
Estes arrived at the realty office at approximately 11:00 a.m. on the morning of March 4, 1997. He and McCauley discussed business and then went to lunch together. After lunch, Estes and McCauley went to Estes's house. After entering the house, McCauley watched television in the den while Estes went into the bathroom. Later, Estes left and McCauley locked the door and took a shower.
Some time before McCauley showered, Estes had cut a hole in a cardboard box, placed a camcorder inside the box, and turned the camcorder on to record. Estes had placed the box containing the camcorder on a closet shelf in a position from which it could record his bathroom and dressing room area.
The next day, March 5, 1997, McCauley returned to Estes's house to pick up some clothes she had left there the previous day. While there, McCauley noticed, in the closet, the cardboard box with a hole in it. The box was empty.
On March 7, 1997, when McCauley returned to clean Estes's house, she noticed an electrical outlet adapter plugged into a lighting fixture in the bathroom closet in which the box was located. In another bedroom, she also noticed shavings from the cardboard box. McCauley became suspicious and searched for Estes's camcorder; she found it under his bed.
McCauley viewed the videotape in the camcorder. The video tape showed approximately four minutes and fifteen seconds of McCauley in various stages of undress; McCauley is nude at some points of the video. McCauley testified that she appeared on the first part of the tape. She also testified that the tape showed Estes checking to ensure the camcorder was operating and verifying that the camcorder was videotaping the shower area. It is undisputed that McCauley has never been romantically or sexually involved with Estes and that she did not consent to being taped while changing clothes and showering.
Estes claims that he believed that his sister-in-law was conspiring against him with another real estate company. Estes testified that he was trying to catch his sister-in-law in his home and that he videotaped McCauley by mistake. Estes testified that he had turned the camcorder on to record on the morning of March 4, 1997. He also testified that he knew that McCauley would be coming over that afternoon, but that he had tried to turn the camcorder off before McCauley showered.
When McCauley sued Estes, Estes sought a defense and indemnity based on his homeowner's insurance policy with Alfa. The homeowner's insurance policy contains an exclusion stating that Alfa does not provide coverage for:
"a. bodily injury or property damage:
 "(1) which is either expected or intended by an insured; or
 "(2) which is the result of willful or malicious acts of an insured."
In entering its judgment holding that Alfa had no duty to indemnify or to defend Estes, which holding was based on the exclusion, the trial court stated: "While the complaint is artfully drafted by [McCauley] to include a claim of negligence along with counts of intentional misconduct, it is clear to this Court that the allegations are solely allegations of willful or malicious acts, pursuant to an objective and reasonableness standard." The trial court found that the allegations of the complaint would support only claims of willful or malicious acts by Estes.
McCauley argues that the trial court erred because she did not allege that Estes's acts were "willful or malicious," that is, because, she says, she does not allege that Estes intended to cause her harm. McCauley argues that the trial court should utilize a subjective standard to determine whether an injury is intentional. See Alabama Farm Bureau Mut. Cas. Ins. Co. v. Dyer,454 So.2d 921 (Ala. 1984). McCauley argues that under a subjective standard, the issue of intent is a question of fact. The policy exclusion in Alabama Farm Bureau Mut. Cas. Ins. Co. v. *Page 722 Dyer disallowed coverage for injury or damage that was "expected or intended from the standpoint of the insured." 454 So.2d at 922. Our supreme court held that a subjective standard governed that case because the exclusion clause raised the issue whether the insured had intended to cause bodily injury to another.
However, in reaching its judgment in the present action, the trial court did not rely on a contract provision that excludes coverage for the intentional acts of the insured. Rather, the trial court held that the provision excluding coverage for injury or damage "which is the result of willful or malicious acts of an insured" precluded coverage in this case. We conclude that the trial court ruled correctly, and we affirm.
Our supreme court has held an objective standard is to be applied where the policy exclusion at issue denies coverage for bodily injury or property damage "which is the result of willful and malicious acts of an insured." State Farm Fire Cas. Co. v.Davis, 612 So.2d 458, 465 (Ala. 1993). The exclusion at issue in this case focuses on the acts of the insured, and not on whether the insured intended to cause injury. The trial judge specifically found that although McCauley had phrased her complaint so as to include the word "negligence," her complaint clearly alleged only a willful or malicious act.
Our research revealed no Alabama cases on point. We find the reasoning of the Louisiana Court of Appeal in addressing cases involving similar exclusionary provisions particularly persuasive.
In Keathley v. State Farm Fire Cas. Ins. Co., 594 So.2d 963
(La.App. 1992), the defendant struck the plaintiff in the face, causing the plaintiff to lose several teeth. The court held that the defendant's homeowner's insurance provider was not required to indemnify or to defend the defendant, because of a policy exclusion; that exclusion was identical to the one at issue in this case. The court held that although the defendant might not have intended the resulting injury to the plaintiff, or the extent of that injury, the act of striking the plaintiff was a willful act for which coverage was excluded.
In Jeansonne v. Detillier, 656 So.2d 689 (La.App. 1995), the defendant filed a false felony complaint alleging that the plaintiff had raped her. The plaintiff sued the defendant and the defendant's homeowner's insurance provider. After a jury trial, the trial court dismissed the insurer from the case after finding that the policy did not provide coverage for the defendant's actions. The appellate court affirmed, holding that the clause excluding coverage for injury or damage "which is the result of willful and malicious acts of an insured" negated the insurer's obligation to indemnify the defendant.
The courts in both Jeansonne and Keathley quoted a 1964 edition of William L. Prosser, Law of Torts, in defining "willful" conduct as that in which the actor "has intentionally done an act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow."[1] Jeansonne v. Detillier, 656 So.2d at 692; Keathleyv. State Farm Fire Cas. Ins. Co., 594 So.2d at 965. In both cases, the court noted that although the defendants might not have intended to cause harm to the plaintiffs, they had acted with total indifference to the consequences of their actions. The same can be said regarding the conduct of Estes. "[W]hile [the defendant] may not have fully appreciated the consequences that would follow from [his] actions, that does not make [his] actions any less willful or malicious." Jeansonne a Detillier, 656 So.2d at 692.
The trial court was correct in determining that McCauley's complaint and deposition testimony alleged only willful or malicious acts by Estes. We agree with the Louisiana Court of Appeal on this issue; we affirm the summary judgment based on the exclusionary provision in the homeowner's insurance policy.
AFFIRMED. *Page 723 
CRAWLEY, J., concurs.
ROBERTSON, P.J., and YATES and MONROE, JJ., concur in the result.
[1] This definition is incorporated in Prosser and Keeton onTorts § 34 (5th ed. 1984).