Jeannie B. NORRIS, Individually and as
Mother, Natural Guardian, and Next Friend
· of Skye Thomas, a Minor *v.*
STATE FARM FIRE & CASUALTY COMPANY

99-1115                                                    16 S.W.3d 242

Supreme Court of Arkansas
Opinion delivered May 18, 2000
[Petition for rehearing denied June 29, 2000.* ]

---

* BROWN, IMBER, and SMITH, JJ., would grant.

*David B. Bogard*, Judge;

*David H. Williams,* for appellant.

*Matthews, Sanders, & Sayes,* by: *Doralee Idleman Chandler* and *Mel Sayes,* for appellee.

RAY THORNTON, Justice. The issue in this case is whether an insurance policy issued by the appellee, State Farm Fire & Casualty Company, excludes coverage of unintended or accidental results of its insured's actions. The trial court granted State Farm's summary judgment motion, finding that coverage was excluded. Because we have determined that State Farm's policy language is ambiguous, we reverse and remand.

On May 17, 1996, fifteen-year-old Skye Thomas, the son of appellant, Mrs. Jeannie B. Norris, was walking home from school when Zack Rogers, aged fifteen, and two other boys confronted him. Skye "smarted off" to Zack, who then hit Skye on his right jaw. Skye fell face first, without breaking his fall, onto the concrete pavement, fracturing the base of the skull and the bones around his left eye.

Zack and the other boys helped Skye up and walked with him to the nearby house of another friend. Skye's left eye began to blacken and swell shut. When they arrived at the friend's house, Zack gave Skye some pain medication and an ice pack for his eye. Zack, a small boy for his age, stated in his deposition that he did not intend to hit Skye so hard as to knock him over or cause him to hit the pavement.

Within a few hours, Skye was rushed to the hospital where he was diagnosed with mild to moderate brain damage. Skye sustained fractures to the base and roof of the left orbit, the left maxillary sinus, and the base of the skull. Dr. Charles Teo, the chief of pediatric neurosurgery at Arkansas Children's Hospital, reviewed Zack's deposition and formed an opinion within a reasonable degree of medical certainty that Skye's injuries were caused by his head hitting the pavement and not by Zack's punch to the right jaw. Four months later, Dr. Carolyn Patterson of Arkansas Children's Hospital performed a neuropsychological evaluation, and determined that Skye suffered from long-term sequelae from the injury. Dr. Patterson diagnosed Skye with mild diffused inefficiency in the operations of the brain, short-term and long-term memory loss, and emotional instability.

Appellant filed an action against Zack Rogers through his mother, Zenda Griebel, who was insured under a homeowner's policy written by State Farm. When State Farm contended it was not required to defend the litigation, or provide liability coverage for the injuries sustained by Skye Thomas, appellant filed an action for declaratory judgment against State Farm to have the trial court interpret the coverage language of the policy including its exclusionary provisions.

■ Appellant contended that State Farm owed a duty to defend and to provide liability coverage for the underlying tort action. State Farm was granted summary judgment on the basis of the exclusionary language. In reviewing summary judgment cases, we determine whether the trial court's grant of summary judgment was appropriate based on whether the evidence presented by the moving party left a material question of fact unanswered. The moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is not a genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ark. R. Civ. P. 56 (1999); *McCutchen v. Huckabee*, 328 Ark. 202, 943 S.W.2d 225 (1997). Appellant brings this appeal from the grant of summary judgment, contending that the exclusionary language is ambiguous and against public policy.

■ Our law regarding the construction of an insurance contract is well settled. The language in an insurance policy is to be construed in its plain, ordinary, popular sense. *CNA Ins. Co. v. McGinnis*, 282 Ark. 90, 666 S.W.2d 689 (1984). Once it is determined that coverage exists, it then must be determined whether the exclusionary language within the policy eliminates the coverage. Exclusionary endorsements must adhere to the general requirements that the insurance terms must be expressed in clear and unambiguous language. *Nationwide Mut. Ins. Co. v. Worthey*, 314 Ark. 185, 861 S.W.2d 307 (1993).

We first consider the language of the policy that extends coverage to the insured. The policy defines "insured" as "you and residents of your household, any other person under the age of 21 who is in the care of a person described above." The policy also defines "occurrence" as "an *accident* which results in: (a) bodily injury; or (b) property damage, during the policy period." (Empha-

sis added.) The policy then provides, among other coverages, as follows:

> COVERAGE M — MEDICAL PAYMENTS TO OTHERS. We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of *an accident* causing bodily injury. (Emphasis added.)

It is apparent that the policy language clearly extends coverage for an accident causing bodily injury.

We next consider whether coverage is excluded for unintended or accidental results from an occurrence that is (a) expected or intended, or (b) willful and malicious. We addressed the question whether insurance coverage for unexpected or accidental results could be excluded by language stating that the policy did not cover an injury which is expected or intended in *Talley v. MFA Mutual Ins. Co.*, 273 Ark. 269, 620 S.W.2d 260 (1981), and concluded that accidental or unintended results from intentional acts were not excluded.

In *Talley*, an altercation arose between a sixteen-year-old boy, Tony Davis, and two eighteen-year-old boys. The three boys attended a party. Davis consumed a considerable amount of alcohol, left the party late that evening, got a shotgun, and returned to the party. Davis shot out the rear windows of the two boys' cars. He drove around the block and shot at the cars a second time. A third time, he shot toward the cars. The two boys were hit by the shotgun blast; one was totally blinded, and the other was partially blinded. *Id.*

Davis, the insured, had a homeowner's policy that provided liability coverage for bodily injury caused by the insured. The exclusionary language stated that the policy did not cover "bodily injury . . . which is either expected or intended from the standpoint of the insured." *Id.* We stated:

> *Many acts are intentional in one sense or another; however, unintentional results often flow from intentional acts* (Emphasis added.)

*Id.* In *Talley*, we quoted 10 *Couch on Insurance* 2d § 41.6 (2d ed. 1985), which provides:

> It is only the intended injuries flowing from an intentional act that are excluded . . . and a homeowner's policy covers bodily injury

from unintended results of an intentional act but not for an injury which was intended.

> For the purposes of determining whether recovery can be had under an 'accident' provision of a liability policy, the resulting damage can be unintentional and therefore accidental even though the original acts were intentional . . . . If the consequences consisting of damages from intentional acts are not intended and are unexpected, they are 'accidental' within a policy . . . [.]

*Talley, supra.* We concluded that an exclusion of coverage of an accident insurance policy for the consequences of intentional acts did not support a summary judgment in favor of the insurance company, if the results of the intentional act were accidental or unintended. We returned the case to the trial court for a determination of whether "bodily injury" to the two boys was "expected or intended" from the "standpoint of the insured." *Id.*

■ State Farm contends that the rationale of *Talley* is not applicable to this case, or should be overruled. In *Talley*, we established the principle that a policy insuring against accidental or unintended results did not exclude coverage for such results by an exclusionary clause for acts which were intentional.

The exclusionary clause before us in this case reads as follows:

SECTION II — EXCLUSIONS

Coverage L and Coverage M do not apply to:

A. Bodily injury or property damage:

(1) which is either expected or intended by an insured; or

(2) to any person or property which is the result of wilful and malicious acts of an insured.

■ State Farm contends that the second provision of this exclusion clause eliminates coverage for accidental or unintended results of willful and malicious acts. We disagree. Words excluding coverage for accidental or unintended results are not found in this clause. It would have been easy to include such language, if that had been State Farm's intent. Such language might have stated:

SECTION II — EXCLUSIONS

Coverage L and Coverage M do not apply to:

A. Bodily injury or property damage:

(1) which is either expected or intended by an insured; or

(2) to any person or property which is the *accidental or unintended* result of wilful and malicious acts of an insured.

The policy promises to cover accidental results of an insured's actions in its general language. To unambiguously exclude coverage for accidental or unintended results of willful and malicious acts of an insured, those words might have been used, but that was not done. It appears that there is an ambiguity between the general provision, extending coverage for accidents, and the exclusion clause as drafted in the policy.

■ If a provision is unambiguous, and only one reasonable interpretation is possible, we will give effect to the plain language of the policy without resorting to the rules of construction. *Western World Ins. Co. v. Branch*, 332 Ark. 427, 965 S.W.2d 760 (1998). If, however, the policy language is ambiguous, and thus susceptible to more than one reasonable interpretation, we will construe the policy liberally in favor of the insured and strictly against the insurer. Finally, whether the language of the policy is ambiguous is a question of law to be resolved by the court. *Id.*

■ We have determined that the language of the policy is internally inconsistent, and in light of our decision in *Talley, supra,* and in accordance with the principle that in the event of ambiguity we will construe the policy liberally in favor of the insured, we conclude that the policy does not exclude accidental or unintended results of willful and malicious acts from coverage.

We note that other jurisdictions have interpreted similar exclusionary language by holding that coverage for accidental or unintended results was not excluded. In *Baugh v. Redmond*, 565 So. 2d 953 (La. Ct. App. 1990), the appellate court of Louisiana held that an intentional act exclusion in a softball player's homeowner's policy did not bar coverage of his liability for battery upon the umpire, where the insured's striking the umpire was neither premeditated nor intended to inflict serious bodily injury, but was rather a provocative gesture. *See also Vermont Mut. Ins. Co. v. Singleton by & through Singleton*, 446 S.E.2d 417 (S.C. 1994) (holding that intentional-act exclusion did not apply to exclude coverage for injuries sustained in a fist fight); *Schexnider v. McGuill*, 526 So. 2d 513 (La. Ct. App. 1988)(holding that massive cheek bone injuries from a

quick blow to the face were not the result of an intentional act, as the scope of the injury to the plaintiff far exceeded what any reasonable person would expect).

We now address the question of whether Zack's actions resulted in unintended or accidental injuries. Zack admits to hitting Skye in the jaw, but stated that he had no intent to cause the severe injuries that Skye sustained in his fall to the concrete. In his deposition, Zack testified, "I mean, I just hit him. . . . I didn't wind up or anything." Although Zack had the intent to hit Skye, he states that the injuries that flowed from the punch were unintended. He asserts that he had no intent to hit Skye so hard as to cause the severe injuries that Skye sustained. Under Couch's language, if Skye's injuries were not intended or were unexpected, that result would be "accidental" and, thus, should be covered under the homeowner's liability policy.

■ From our review of the record in the present case, it seems that the serious injuries to Skye were possibly accidental or unintended. However, the trial court did not reach that issue. We conclude that the trial court's decision to grant summary judgment to State Farm without consideration whether Skye's bodily injury was an accidental or unintended result of Zack's actions was in error. *Talley, supra*, controls the disposition of this case, and accordingly, we reverse and remand for a determination of whether the injuries suffered by Zack were unintended or accidental.

Appellant also argues that State Farm's exclusion is void as a matter of public policy. Because we have concluded that the policy is ambiguous, we need not specifically address the issue of public policy.

Reversed and remanded.

BROWN, IMBER, and SMITH, JJ., dissent.

ROBERT L. BROWN, Justice, dissenting. I dissent because the reasoning of the majority is flawed. At issue in this case is the following exclusion in State Farm's insurance policy:

SECTION II — EXCLUSIONS

Coverage L and Coverage M do not apply to:

A. Bodily injury or property damage;

(1) which is either expected or intended by an insured; or

(2) to any person or property which is the result of wilful and malicious acts of an insured.

The majority holds that this section of the policy is ambiguous. According to the majority, to be absolutely clear the exclusions should read this way:

SECTION II — EXCLUSIONS

Coverage L and coverage M do not apply to:

A. Bodily injury or property damage;

(1) which is either expected or intended by an insured; or

(2) to any person or property which is the result of wilful and malicious acts of an insured *which result is specifically intended by an insured.*

The majority's conclusion is illogical. Section A(2) excludes all willful and malicious acts committed against a person, irrespective of whether the insured intended to actually inflict the precise injury. Why is that unclear? What the majority seeks to do is limit the exclusion only to malicious acts where the result of bodily injury is specifically intended by the insured. But that is not how the exclusion reads. And that is not what the policy provides or what Ms. Norris agreed to.

This is not the situation we dealt with in *Talley v. MFA Mut. Ins. Co.*, 273 Ark. 269, 620 S.W.2d 260 (1981), where this court interpreted the language in A(1). In that case, the issue under Section A(1) was whether the "accident" policy covered unintended *results* from intentional acts of the insured. We held that the policy was ambiguous on that point. In the instant case, Section A(2) is clear that *all results* from willful and malicious acts are excluded. It does not make any difference whether those results were subjectively intended by the insured or not.

Our holding today makes our jurisdiction a minority of one. No other jurisdiction has interpreted comparable language to Section A(2) as ambiguous; nor has any jurisdiction added the limiting language that the majority seeks to add to the policy exclusion. *See, e.g., State Farm Fire & Cas. Co. v. Martin, et al*, 710 N.E.2d 1228 (Ill. 1999) (exclusion in liability policy for bodily injury that is the result of willful and malicious acts of the insured was not ambiguous and

did not depend on the subjective intent of the insured); *McCauley v. Estes*, 726 So.2d 719 (Ala. Civ. App. 1998) (exclusion in home-owner's policy for bodily injury resulting from willful or malicious acts of the insured focuses on the acts of the insured and not on whether the insured intended to cause the injury); *Jeansonne v. Detillier*, 656 So.2d 689 (La. Ct. App. 1995) (exclusion in home-owner's policy for bodily injury resulting from willful and malicious acts of insured excludes damages for such injury regardless of whether the insured intended the specific injury or not); *Keathley v. State Farm Fire & Cas. Ins. Co.*, 594 So.2d 963 (La. Ct. App. 1992) (reversed the trial court and held that exclusion in homeowner's policy for bodily injury resulting from willful and malicious acts applied, even though insured did not intend the severity of the bodily injuries caused by his blow to plaintiff's head). Rather, all of these jurisdictions refused to read into the exclusionary language a requirement that the insured specifically intend to cause the result-ing bodily injury.

The majority does attempt to cite authority for its unique interpretation, but the cases cited are clearly distinguishable. In *Baugh v. Redmond*, 565 So.2d 953 (La. Ct. App. 1990), the court interpreted language similar to A(1), but not language similar to A(2). The Louisiana Court of Appeals specifically distinguished the *Baugh* case for that reason in *Keathley v. State Farm Fire & Cas. Ins. Co., supra*, and held in favor of State Farm's position as has already been shown. The same is true of the second and third cases cited by the majority in that the appellate courts in those cases interpreted language that is not even remotely similar to the A(2) language in the instant case. *See Vermont Mut. Ins. Co. v. Singleton*, 446 S.E.2d 417 (S.C. 1994). *Schexnider v. McGuill*, 526 So.2d 513 (La. Ct. App. 1988).

The majority stands alone in its unprecedented interpretation, which is a patent rewrite of the policy language. I would affirm the trial court's grant of summary judgment.

IMBER and SMITH, JJ., join.