# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-4157WA

_____

| | | |
|---|---|---|
| John H. Harrod; Brad Harrod; Brent Harrod; Matt Harrod, doing business as John H. Harrod & Sons Farm, doing business as John H. Harrod & Sons Poultry, | * * * * * * | |
| | * | On Appeal from the United |
| Appellants, | * | States District Court |
| | * | for the Western District |
| v. | * | of Arkansas. |
| | * | |
| | * | |
| Farmland Mutual Insurance Company, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: September 10, 2003
Filed: October 22, 2003

_____

Before LOKEN, Chief Judge, HEANEY and RICHARD S. ARNOLD, Circuit
     Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

     John H. Harrod and others (the Harrods) appeal from the District Court's[1]
decision that certain items were not "stock" as that term was defined in an insurance

_____

[1]The Hon. Harry F. Barnes, United States District Judge for the Western
District of Arkansas.

policy issued by Farmland Mutual Insurance Company to them. The Harrods also appeal the District Court's decision to deny prejudgment interest. In our opinion, the District Court properly construed the contract and properly denied prejudgment interest; therefore, we affirm.

## I.

A fire destroyed the Harrods' packing shed, which also served as an office and storage area, and its contents in August 1998. Previously, in February 1998, the Harrods had purchased a contract of insurance from Farmland that covered, among other things, the following categories of property: real and business personal property, stock, newly acquired or constructed property, newly acquired stock, tank leakage, débris removal, and electronic data processing equipment. After the fire, the Harrods made a claim against the insurance policy to recover the losses resulting from the fire. Farmland required the Harrods to submit a list of the items that they claimed had been destroyed by the fire and to attach a value to each item. Farmland paid the Harrods certain amounts at different times, totaling $726,231.06; thereafter, Farmland refused to pay any additional amounts on the policy. The Harrods sued Farmland claiming Farmland still owed $401,857.50.

During the course of the proceedings in the District Court, the Harrods filed a motion for partial summary judgment, claiming that under the terms of the policy and Arkansas law, they were entitled to receive the full policy limits for the categories of real and business personal property and newly acquired or constructed property. The District Court granted partial summary judgment to the Harrods, and the only remaining issue for trial was to determine which items constituted "stock" under the policy. After a one-day bench trial on this issue and after examining various lists of items submitted by the parties, the District Court awarded the Harrods $142,636.50 for items covered under the category of stock. The District Court later amended this determination to include some additional items as stock, totaling $8,016.50, and then

entered a final order for the total amount unpaid of $291,712.17. This amount represented the total amount due under the policy, less the amount previously paid. The District Court denied prejudgment interest on this amount.

On appeal, the Harrods contend that the District Court erred in its construction of the term stock and in denying prejudgment interest.

## II.

The Harrods argue that Farmland's use of the term "stock" in the policy is ambiguous, and that the District Court erred in not construing the term liberally against Farmland. Whether a contract is ambiguous is a question of law, and we review questions of law de novo. Columbia Ins. Co. v. Baker, 108 F.3d 148, 149-50 (8th Cir. 1997). Under Arkansas law, an insurance policy is ambiguous if the policy is reasonably susceptible of two or more interpretations. Keller v. Safeco Ins. Co., 317 Ark. 308, 311, 877 S.W.2d 90, 93 (1994). If the policy is determined to be ambiguous, the court should interpret the policy liberally in favor of the insured. Norris v. State Farm Fire & Cas. Co., 341 Ark. 360, 366, 16 S.W.3d 242, 246 ( 2000). We hold that the policy is not ambiguous.

We must first look at the language of the policy, which defines the term stock as "the inventory of commodities, goods or merchandise held for manufacturing, sale, trade or storage." Business personal property is defined as "all property of a business nature, other than real property, autos, or stock . . .." Thus, an item must be either business personal property or stock, but it cannot be both. The term "business personal property" is a catchall phrase intended to include items of a business nature that are not otherwise covered under another category in the policy. However, the Harrods' losses exceeded the policy limits for business personal property. Thus, in order for the Harrods to recover, the disputed items must be categorized as stock.

Turning to the actual words contained in the definition of stock, the Harrods argue that the term stock is ambiguous because the words within the definition are not defined. We disagree. If one believes that the sub-terms (i.e., commodities, goods, etc.) need to be defined to provide clarity, then the words used in those definitions would also need to be defined. The result would be an insurance policy the size of a phone book, which would be no more clear than the current contract. Rather, when construing the terms of an insurance policy, we must construe the language "in its plain, ordinary, and popular sense." Norris, id. at 363, 16 S.W.3d at 244.

The definition of stock can be divided into three parts: (1) an inventory (2) of items — commodities, goods, or merchandise — (3) held for a specified purpose — manufacture, sale, trade, or storage. If the definition is viewed as a whole, then implicit in the definition of stock is the notion of commerce, selling by the Harrods and buying by someone else.

"Inventory" generally means items held by a person for sale. This popular meaning implies that the person holding the inventory is in the business of selling such items. The policy states that the inventory may consist of commodities, goods, or merchandise. These terms, taken as a whole, are broad and encompass a wide range of items. The ordering of the words (commodities, goods, merchandise) indicates that the term "stock" was intended to include the components of a product, and items used in selling it, as well as the final product itself. However, the dispute does not seem to be whether these items are commodities, goods, or merchandise, but instead, whether the items are held for the purpose of manufacturing, sale, trade, or storage.

The District Court noted that the plaintiffs were in the business of raising and selling vegetables. The Court concluded that a reasonable interpretation of the term "stock" would include "items such as seed, packing boxes, label applicators and other items directly related to the business of growing and selling vegetables." The District

-4-

Court's decision included in "stock" all items that were used in the growing and selling of vegetables, from the seeds themselves to the packaging materials in which the vegetables were shipped. In denying that the other items were stock as defined by the policy, the District Court noted that items such as "a cultivator, fiberglass pipe, chains, battery charger, wrenches, motors, tires and rims, table saw, water cooler, and mattresses" were not "part of the Harrods' inventory of goods held for manufacture or sale . . .."

The Harrods contend that the other items on their list, which were excluded by the District Court's judgment, were held for storage. Although the items were "stored" in the packing shed, the Harrods were not in the business of storage. The definition of stock implies that the Harrods must be in the business of storage in order for those items to constitute stock. If any item kept or stored in the packing shed is stock, then little or nothing would be left of the category of business personal property. Thus, the broad reading of stock for which the Harrods argue would make the policy internally inconsistent and create ambiguity.

When the policy is viewed as a whole, and the language is given its popular and ordinary meaning, the term stock is not ambiguous. The term stock carries with it a notion of commerce, or the buying and selling of items, and the District Court's construction of the term is consistent with this notion.

### III.

The Harrods also argue that the District Court erred in denying their request for prejudgment interest. We disagree.

Arkansas law allows prejudgment interest "where the amount of damages is definitely ascertainable by mathematical computation, or if the evidence furnishes data that make it possible to compute the amount without reliance on opinion or

discretion." <u>Woodline Motor Freight, Inc. v. Troutman Oil Co.</u>, 327 Ark. 448, 453, 938 S.W.2d 565, 568 (1997).

The Harrods argue that all of the items they claimed as stock had an ascertainable value because "[a]ll of the items claimed under this coverage are tangible property, which is regularly sold in commerce and therefore has an ascertainable value." Brief of Appellants 19. Although the Arkansas Supreme Court had earlier allowed prejudgment interest "if the damaged or destroyed property had a market value," see <u>Woodline</u>, 327 Ark. at 450, 938 S.W.2d at 567, the Court in <u>Woodline</u> rejected the earlier precedent in favor of a stricter interpretation. The Harrods' use of market value does not comport with the <u>Woodline</u> standard.

The facts in <u>Woodline</u> support our conclusion. In <u>Woodline</u>, the defendant's truck collided with a building and destroyed the building and its contents. The owner of the building and the tenant sued the driver for damages. The Arkansas Supreme Court held that the trial court erred in awarding prejudgment interest on both the building and its contents. Because varying bids were received for reconstruction of the building, and there was conflicting testimony about whether to rebuild or repair the building, the Court held that awarding prejudgment interest on the building was improper, as the amount of damages was not ascertainable at the time of the loss. The Court denied prejudgment interest on the contents of the building as well, concluding that the plaintiff's assignment of a market value to each item was subjective. Thus, at the time of the loss, the amount due was neither liquidated nor ascertainable by fixed standards.

> Prejudgment interest is allowable where the amount of damages is definitely ascertainable by mathematical computation, or if the evidence furnishes data that make it possible to compute the amount without reliance on opinion or discretion.

<u>Id</u>. at 453, 938 S.W. 2d at 568.

In the present case, just as in <u>Woodline</u>, the Harrods lost a building and its contents. The Harrods determined the value of the items in the building by assigning a market value to each item. In fact, Brent Harrod testified that the values placed on the items were derived from his opinion and various other sources such as catalogues and newspapers. We fail to see how this case differs from <u>Woodline</u>. Thus, we affirm the District Court's denial of prejudgment interest on the items that constitute stock.

The Harrods also argue that because Farmland stipulated to owing certain amounts covered by the policy under categories other than stock, and had no defense for not paying those amounts, the Harrods are entitled to prejudgment interest on at least those amounts. They appear to be arguing that the amount of damages becomes liquidated at the time when a party stipulates or agrees to an amount owed. While this argument has some merit, we are not free to accept it. Under Arkansas law, the amount of damages must be ascertainable "at the time of the loss." <u>Wheeler Motor Co. v. Roth</u>, 315 Ark. 318, 329, 867 S.W.2d 446, 451 (1993), cited with approval in <u>Woodline</u>, 327 Ark. at 452, 938 S.W.2d at 568. In this case, the parties did not stipulate to these amounts until a lawsuit had been filed. A party's agreement to pay a certain amount after a loss occurs does not mean that the amount of damages was ascertainable at the time of the loss. Moreover, we believe that if a claim were to be deemed liquidated when a party agrees to pay it, parties might have some incentive to dispute issues they would not otherwise have disputed in order to avoid paying prejudgment interest. It seems counterintuitive to force parties to dispute the amount of damages to avoid paying prejudgment interest. This could serve only to lengthen the time until the injured party receives compensation.

Affirmed.

_____