Kenneth S. Hixson, Judge, dissenting.
An insurance company's duty to defend an insured is broader than the duty to indemnify, and the duty to defend arises when there is a possibility that the injury or damage may fall within the policy coverage. In my view, the trial court erred in this case by entering summary judgment in favor of the appellee insurance company because, at a minimum, the insurance company should have been required to defend the claim against the appellants under the general-liability coverage of the insurance policy. Therefore, I dissent.
It is difficult to overstate the breadth of an insured's duty to defend. 3 New Appleman on Insurance Law Library Edition § 17.01[1][b][i]. Many insureds purchase liability insurance for the peace of mind that comes with knowing that their insurer will defend them if they are sued in an action that comes within the scope of protection provided by their policy. Id. § 17.01[1][a]. Courts often refer to the duty to defend as "litigation insurance" and construe the duty to defend very broadly to provide insureds with the most expansive amount of protection available under the terms of the policy. Id.
The duty to defend arises whenever allegations in a suit against the insured create the potential for covered liability. 3 New Appleman on Insurance Law Library Edition § 17.01[ii]. Neither adjudicated facts nor the ultimate basis for liability, if any, is relevant to whether a suit is "seeking" covered damages. Id. Indemnity coverage, on the other hand, is contingent only on the facts adjudicated at trial, and whether the suit initially brought against the insurer was "seeking" covered damages is not necessarily dispositive of whether the insurer must pay damages on behalf of the insured. Id.
In Murphy Oil U.S.A., Inc. v. Unigard Security Insurance Co. , 347 Ark. 167, 176, 61 S.W.3d 807, 812-13 (2001), our supreme court analyzed the duty to defend and stated:
In examining the duty to defend, this court has recognized the general rule that the allegations in the pleadings against the insured determine the insurer's duty to defend. Additionally, this court has recognized that the duty to defend is broader than the duty to indemnify. However, the duty to defend arises when there is a possibility that the injury or damage may fall within the policy coverage. Conversely, where there is no possibility that the damage *415 alleged in the complaint may fall within the policy coverage, there would be no duty to defend.
(Emphasis added.) Not only does Murphy Oil direct us to determine the duty to defend solely on the allegations in the pleadings, one must remember that this case was disposed of on a motion for summary judgment. At this summary-judgment stage of the proceedings, the only information available with regard to the incident at Ernie Biggs is in the complaint filed by Griffin against Ernie Biggs, which sounds purely in negligence. Perhaps, this is artful pleading by the appellant's attorney, but it is improper for the trial court to make findings of fact in deciding a summary-judgment motion. See Nationwide Mut. Ins. Co. v. Matthews , 2013 Ark. App. 175, 2013 WL 1007718. Therefore, the trial court must look to the allegations in the complaint to determine whether there is a duty to defend. As long as a complaint alleges an injury that may be within the scope of the policy, the insurer must defend its insured until the claim is confined to a recovery the policy does not cover. Erie Ins. Exch. v. Fidler , 808 A.2d 587 (Pa. Super. Ct. 2002).
As stated in the majority opinion, this case involves a claim for insurance coverage by appellants EB Management Company, LLC, and Ernie Biggs of Little Rock (Ernie Biggs) against its insurer, appellee Houston Specialty Insurance Company (Houston). Ernie Biggs brought a complaint for declaratory judgment seeking an order to require Houston to defend and indemnify it against claims made in a complaint filed by Brandon Griffin under Houston's general liability coverage in the insurance policy. The parties filed cross-motions for summary judgment, and the trial court entered an order denying Ernie Biggs's summary-judgment motion and granting Houston's summary-judgment motion.
The incident at the Ernie Biggs piano bar involved a patron, Brandon Griffin, and the bouncer, Michael Tice. The litigation began in April 2016 when Griffin filed a complaint, sounding exclusively in negligence , against Ernie Biggs and Tice. In the complaint, Griffin alleged that while at the bar he paid one of the piano players twenty dollars to come on stage and play the drums; that the piano player stopped playing the song stating that Griffin was not keeping the beat; and that Griffin asked for his money back but the piano player refused. Griffin further alleged that Tice, acting in the scope of his employment for Ernie Biggs, negligently caused him injury as follows:
Although Plaintiff Brandon Griffin was leaving the stage under his own free will, Defendant Michael Scott Tice, an employee of Ernie of Little Rock, Inc., d/b/a/Ernie Biggs Piano Bar, and while he was acting in the scope and performance of his employment with Ernie of Little Rock Inc., d/b/a/Ernie Biggs Piano Bar, negligently decided to come on stage and jerk Plaintiff Brandon Griffin off the stage, negligently led him to the door with too much force, and negligently threw Plaintiff Brandon Griffin out the door causing Plaintiff Brandon Griffin to hit his head on the concrete sidewalk outside the front door. As a result of being negligently thrown out of the piano bar, Plaintiff Brandon Griffin was knocked unconscious, sustained a brain bleed causing a traumatic brain injury, and has permanent brain damage. These acts by Defendant Michael Scott Tice, an employee of Ernie of Little Rock Inc., d/b/a/ Ernie Biggs Piano Bar, and while he was acting in the scope and performance of his employment with Ernie of Little Rock Inc., d/b/a Ernie Biggs Piano Bar, constitute negligence with that negligence being imputed to *416 Defendant Ernie of Little Rock Inc., d/b/a/ Ernie Biggs Piano Bar pursuant to the legal doctrine of Respondent Superior.
(Emphasis added.) Griffin sought damages proximately caused by the negligence of Tice and imputed to Ernie Biggs.
The pertinent provisions in the insurance policy are as follows. The general-liability coverage, with a $ 1 million limit, provides:
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages[.]
b. This insurance applies to "bodily injury" ... only if ... the "bodily injury" ... is caused by an "occurrence"[.]
(Emphasis added.) The term "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."
Observe the difference in the two duties under the policy. The insurance company has the "duty to pay " only if the insured becomes "legally obligated to pay ," i.e., a judgment is actually rendered against its insured. However, the insurance company has the "duty to defend ... any suit seeking those damages. " Note that the policy language "seeking damages" in the policy at issue is the exact same phrase used in Appleman on Insurance in determining the duty to defend where it states: Neither adjudicated facts nor the ultimate basis for liability, if any, is relevant to whether a suit is "seeking" covered damages. 3 New Appleman on Insurance Law Library Edition § 17.01[ii]. As one can readily ascertain, the duty to defend is much broader and the duty attaches if its insured is sued and the plaintiff is seeking damages allegedly caused by an occurrence or accident.
While the policy grants coverage under the above-cited general-liability provisions, the policy attempts to exclude, and then limit, coverage under an endorsement titled, "Limited Assault or Battery Coverage." If the insured is able to establish that the claim against it falls within the initial grant of coverage in the insuring agreement, the burden then shifts to the insurer to prove that an exclusion applies to bar coverage. 3 New Appleman on Insurance Law Library Edition § 18.03[1]. Generally, the insuring agreement is given broad interpretation in favor of coverage while the exclusions are interpreted narrowly. Id. The intent to exclude coverage in an insurance policy should be expressed in clear and unambiguous language, and an insurance policy, having been drafted by the insurer without consultation with the insured, is to be interpreted and construed liberally in favor of the insured and strictly against the insurer. Nationwide Mut. Ins. Co. v. Worthey , 314 Ark. 185, 861 S.W.2d 307 (1993).
With those principles in mind, we must analyze the endorsement that excludes, and then limits, coverage. The "Limited Assault or Battery Coverage endorsement" contains the following exclusion applicable to the general-liability coverage:
Injury, damage or loss, however, caused, arising, directly or indirectly, out of:
1. Assault;
2. Battery;
3. Any "assault or battery incident."
Under the definitions section of the policy:
"Assault or battery incident" means harmful or offensive contact between or among two or more persons including, but not limited to, apprehension of harmful or offensive contact or threats *417 or harmful or offensive contact. An "assault or battery incident" may be:
a. provoked or unprovoked by any person; and
b. arise out of or result from any act or omission in connection with:
(1) Prevention or suppression of an "assault or battery incident";
(2) Protection of persons or property;
(3) Negligent hiring, supervision, retention or training of any "employee" of the Insured; or
(4) Implementation of adequate security measures, through security personnel, surveillance, or other security devices.
(Emphasis added.)
In Houston's motion for summary judgment, it contended that the conduct of Ernie Biggs's employee fell within the policy definition of "assault or battery incident" and therefore, the occurrence was excluded from the general-liability portion of the insurance policy. In granting Houston's summary-judgment motion, the trial court found that the "assault and battery" coverage endorsement and exclusion applied, and stated, inter alia :
[T ]he Court must focus on the incident or injury that gave rise to the claim, rather than the theory of liability asserted in the Amended Complaint. The action of Michael Tice (the Ernie Biggs' bouncer who ejected Brandon Griffin from that establishment resulting in Griffin sustaining a closed head injury from the fall) was "harmful or offensive contact between ... two ... persons ..." regardless whether Michael Tice intended to commit the torts of assault or battery as defined by the Arkansas Model Jury Instructions (Civil). To arrive at a different conclusion would involve the Court imposing a meaning that is different from the plain and unambiguous definition of "assault and battery" stated in the policy. In effect, the Court would be re-writing the contract on terms contrary to the explicit and unambiguous definition the insurance carrier declared when the coverage was offered and which its insured accepted.
(Emphasis added.)
It is clear from the following sentence that the trial court erred in its reasoning: "[T ]he Court must focus on the incident or injury that gave rise to the claim, rather than the theory of liability asserted in the Amended Complaint. " That is exactly opposite from what the trial court should have done. It is clear from Appleman on Insurance , Murphy Oil , Matthews , and Erie Insurance Exchange , that the trial court is required to accept the allegations in the pleadings to determine the duty to defend. In determining the duty to defend, especially in a motion for summary judgment, the trial court cannot adjudicate the facts to justify its decision. That is exactly what has occurred here. The trial court reviewed the allegations and determined that the facts of the allegations constituted an "assault and battery incident." That was error. After all the evidence is introduced and the credibility of the witnesses ascertained, it is possible the jury could find that the occurrence was merely negligence.
In this appeal, Ernie Biggs argues that the "assault and battery incident" exclusion in the insurance policy is ambiguous and that therefore, the underlying complaint sounding in negligence triggered Houston's duty to defend under the limits of the general-liability coverage in the policy. Appellant asserts that because the assault-and-battery-incident exclusion is ambiguous, it should be construed against Houston, as the insurer. Appellant asserts that the ambiguity lies in whether an assault/battery under the policy involves the *418 intent to cause some injury as opposed to merely being in harmful or offensive contact with no element of intent required. Appellant claims that a reasonable interpretation of the exclusion requires the intent to cause a harmful or offensive contact, as opposed to mere negligence, before such exclusion applies. In making this argument, appellant borrows from the Arkansas Model Jury Instructions. The term "assault" is not defined in the policy. However, under AMI Civ. 417, the tort of assault must be based on actions of a defendant that are intended to cause apprehension of immediate harmful or offensive contact. The term "battery" is not defined in the policy. However, under AMI Civ. 418, the tort of battery must be based on actions intended to cause a harmful or offensive contact. The appellee, however, counters that the term "assault or battery incident" is defined in the policy itself and urges that the definition unambiguously has no element of intent, so it is unnecessary to resort to any other definitions. The essence of Houston's definition of "assault or battery incident" is that any harmful or offensive contact is excluded. The absurdity of this definition can best be revealed by a few common examples:
• A bartender gives a patron an overly enthusiastic high five and the patron falls and injures himself-That would be "harmful or offensive contact" that caused an occurrence, and therefore excluded.
• A waitress making her way through a crowded floor bumps into a patron and he falls and injures himself-That would be "harmful or offensive contact" that caused an occurrence, and therefore excluded.
• A bouncer guides an inebriated patron to the door and the patron falls and injures himself-That would be "harmful or offensive contact" that caused an occurrence, and therefore excluded.
In none of these examples did an assault occur because there was no "intent to cause apprehension of immediate harmful or offensive contact." Similarly, a battery did not occur because there was no "intent to cause a harmful or offensive contact." However, under Houston's interpretation of the policy, "harmful contact" without more triggers the "assault and battery incident" exclusion.
In Norris v. State Farm Fire & Casualty Co. , 341 Ark. 360, 16 S.W.3d 242 (2000), the issue was whether an insurance policy issued by the appellee, State Farm, excluded coverage for unintended or accidental results of its insured's actions. The policy contained an exclusion for bodily injury caused to any person "which is the result of willful and malicious acts of the insured." The insurance claim arose from an incident where a boy was injured after "smarting off" and being struck in the jaw, resulting in his falling face first onto the pavement and sustaining serious injuries. State Farm argued that the exclusion precluded coverage; the injured party claimed that the exclusion was, at a minimum, ambiguous and did not apply because the injury was the result of accidental or unintended results of willful or malicious acts. State Farm was granted summary judgment based on the exclusionary language, but the supreme court reversed. The supreme court wrote:
State Farm contends that the second provision of this exclusion clause eliminates coverage for accidental or unintended results of willful and malicious acts. We disagree. Words excluding coverage for accidental or unintended results are not found in this clause. It would have been easy to include such language, if that had been State Farm's *419 intent. Such language might have stated:
SECTION II-EXCLUSIONS
Coverage L and Coverage M do not apply to:
A. Bodily injury or property damage:
(1) which is either expected or intended by an insured; or
(2) to any person or property which is the accidental or unintended result of willful and malicious acts of an insured.
The policy promises to cover accidental results of an insured's actions in its general language. To unambiguously exclude coverage for accidental or unintended results of willful and malicious acts of an insured, those words might have been used, but that was not done. It appears that there is an ambiguity between the general provision, extending coverage for accidents, and the exclusion clause as drafted in the policy.
....
We have determined that the language of the policy is internally inconsistent, and in light of our decision in Talley [v. MFA Mut. Ins. Co. , 273 Ark. 269, 620 S.W.2d 260 (1981) ], and in accordance with the principle that in the event of ambiguity we will construe the policy liberally in favor of the insured, we conclude that the policy does not exclude accidental or unintended results of willful and malicious acts from coverage.
Norris , 341 Ark. at 365-66, 16 S.W.3d at 245-46 (emphasis added).
In deciding this case, we must endeavor to read together and harmonize different parts of the insurance policy. The general liability coverage covers injuries arising out of "occurrences," defined in the policy as "accidents." The term "accident" is commonly defined as "an unexpected happening without intention or design," and it may include "unintended or unforeseen consequences of reckless or negligent acts." Liberty Mut. Ins. Co. v. Tabor , 407 Mass. 354, 553 N.E.2d 909, 912 (1990). In Wood v. Safeco Insurance Co. of America , 980 S.W.2d 43 (Mo. Ct. App. 1998), it was held that when a liability-insurance policy defines "occurrence" as meaning "accident," an "occurrence" means injury caused by the negligence of the insured. Conversely, intentional or willful acts are not "occurrences" as that term is commonly defined in insurance policies. Old Republic Ins. v. Comprehensive Health Care , 786 F. Supp. 629 (N.D. Tex. 1992). Generally speaking, protection against liability on the ground of negligence is the principal purpose of commercial-liability policies such as this one.
The exclusion at issue provides that an assault, a battery, or an "assault or battery incident" is excluded from coverage under the general-liability coverage and its limits. "Assault and battery incident" is defined in the policy as "harmful or offensive contact between or among two or more persons." The exclusion language makes no specific provision for whether the "harmful or offensive contact" must result in an intentional injury or whether it may be the result of mere negligence. However, if the exclusion is interpreted to cover mere negligent acts with no element of any willful intent to injure, it would arguably conflict with the general-liability coverage for accidental acts of negligence. Including the element of intent harmonizes the otherwise conflicting provisions. In my view, this creates an ambiguity that must be construed in favor of Ernie Biggs, as the insured under the policy. An insurance policy may not contain a provision that negates the very coverage that the policy purports to provide. See Liberty Mutual , supra. Here, the trial court concluded that there is no coverage if a patron is touched *420 (contacted). There is no protection. That cannot be the insurance coverage the insured purchased. Houston perhaps might have written this endorsement to exclude coverage for "harmful or offensive contact, whether intentional or unintentional. " But because the endorsement language contains no such clarifying language, it is ambiguous and should be interpreted in favor of a duty to defend if the harmful or offensive contact was merely negligent, as alleged in the complaint, as opposed to intentional.
Having determined that based on the current state of the proceedings (summary judgment) a duty to defend exists, I am providing no opinion as to whether that duty could change in the future. Similarly, the issue of whether there is a duty to indemnify is not ripe for review.
I would reverse and hold that Houston Specialty has a duty to defend under the general-liability insurance coverage in the litigation below.
Abramson, Virden, and Whiteaker, JJ., join.