MOLLIE REYNOLDS *v.* JOHNNY HAVENS ET AL

5-5871                                        479 S. W. 2d 528

Opinion delivered May 1, 1972

*Guy H. Jones, Phil Stratton* and *Guy Jones Jr.,* for appellant.

*Henry & Henry,* for appellee.

GEORGE ROSE SMITH, Justice. The ultimate question in this case is whether the two plaintiff-appellees, Johnny Havens and Orby Woodruff, established by clear and convincing evidence the terms of an oral contract by which Woodruff is assertedly entitled to purchase an improved 80-acre tract from the appellant, Mrs. Reynolds, for $21,000. The chancellor, in an opinion holding at least by implication that the clear and convincing rule is inapplicable, upheld the contract of sale and ordered specific performance. In the view we take, the clear and convincing rule is controlling, and the appellees failed to sustain their heavy burden of proof.

The controversy arises from an option to purchase, contained in a two-year lease by which Mrs. Reynolds rented the property to Havens for a term beginning February 1, 1969, and ending January 31, 1971. That lease provided that at any time during the second year of the term the lessee would have the right to purchase the property for $21,000. He was required to give written notice of his intention to purchase, whereupon it became the lessor's duty to furnish an abstract of title and to do any curative work necessary to render the title marketable. When the title had been cleared Mrs. Reynolds was to execute a warranty deed to the property, and Havens was to make payment as follows: He was to pay $4,000 in cash and execute a promissory note for the remaining $17,000 (less the amount of any rents paid during the second year of the term), payable in annual installments of $1,000, at 6% interest.

Havens, admittedly unable to raise the money for the $4,000 down payment, decided to sell his interest in the property to someone else. To that end he listed the

property with United Farm Agency, a real estate company. In the latter part of August, 1971, Jim Hicks, a United salesman, interested the appellee Woodruff in buying the property for $26,000. There was a complication, however, in that Havens, the lessee, had only an option to buy the property.

On September 11, 1971, Woodruff, Hicks, and another United salesman, Joe Castleberry, called on Mrs. Reynolds to arrange for the purchase of the property from her at the option price of $21,000. At the moment it suffices to say that Mrs. Reynolds orally agreed to accept Woodruff as the buyer, in place of the lessee Havens.

It is quite apparent that Mrs. Reynolds, upon learning that Woodruff had agreed to pay Havens $26,000 for the land, decided (upon the advice of her brother and her attorneys) to avoid if possible her obligation to sell the property for $21,000. She accordingly evaded her responsibility to furnish an abstract of title and managed to keep from accepting the September rent from Havens until the agreed 30-day grace period for its payment had expired. She then contended that the lease and the option to purchase were no longer in effect.

Havens and Woodruff at first joined forces, as plaintiffs, in seeking specific performance of the purchase contract. The complaint contained two counts. The plaintiffs asserted in Count 1 that Havens, Woodruff, and Mrs. Reynolds had agreed at the September 11 meeting for Havens to exercise the option and assign it to Woodruff, who was to give his own note for the balance of the purchase price. The complaint tendered the $4,000 down payment and attached as an exhibit a note for the balance, executed by Woodruff and his wife. The plaintiffs averred in Count 2 that if the proof failed to sustain the allegations of Count 1, then Havens' agents (Hicks and Castleberry) had exercised the option on Havens' behalf at the September 11 meeting. In Count 2 the complaint repeated the tender of the $4,000 down payment and attached as an exhibit an alternative note for the balance, signed by Havens and his wife. Mrs. Reynolds pleaded the statute of frauds and other de-

fenses.

Before the trial Havens and Woodruff abandoned their unity of position as plaintiffs, employed separate attorneys, and filed counterclaims against each other. In the circumstances it is not surprising that their proof failed to establish either asserted cause of action against the defendant by the required standard of clear and convincing evidence.

The chancellor, who was understandably reluctant to let Mrs. Reynolds evade her moral obligation to sell the land for $21,000, gave an opinion holding that Woodruff was entitled to purchase the property and give his note for the unpaid balance of the purchase price. The chancellor reasoned that at the September 11 meeting the parties had not modified the contract but had merely agreed to a substituted method of performance, such as was permitted in *Valley Planning Mill Co.* v. *Lena. Lbr. Co.,* 168 Ark. 1133, 272 S.W. 860 (1925). The chancellor added that Woodruff's acts in taking possession of the property, making a payment on the purchase price, and changing his position, were sufficient to take the agreement out of the statute of frauds. In that view of the case the chancellor did not find it necessary to say whether the proof was to be tested by the clear and convincing rule.

We are unable to sustain the chancellor's decision. To begin with, we do not regard the September 11 negotiations as involving only a substituted method of performance with respect to details not falling within the statute of frauds. The controlling rule was stated as follows in the *Valley Planing Mill* case, *supra*:

The general rule is that a material modification of a contract within the statute of frauds must be in writing in order to be valid and binding. Such a contract cannot be modified in essential parts by parol agreement so as to be valid against a plea of invalidity under the statute of frauds. *Arkmo Lumber Co.* v. *Cantrell,* 159 Ark. 445. There is a marked difference, however, between a modification of a written

contract in the essentials required to meet the statute of frauds and an agreement for a substituted method of performance not within the statute. The former is required to be in writing in order to be enforceable as against a plea of the statute of frauds, whereas the latter is valid if in parol.

In the case at bar the modifications recognized by the trial court's decree of specific performance went beyond mere substituted methods of performance not within the statute. For instance, Mrs. Reynolds was compelled to convey the property to Woodruff and to accept his promissory note for the unpaid balance of $16,300 (the agreed amount less a $700 credit for rents paid). A memorandum, to satisfy the statute, must state all the essential terms of the agreement. *Lindsey* v. *Hornady*, 215 Ark. 797, 223 S.W. 2d 768 (1949; *Wyatt* v. *Yingling*, 213 Ark. 160, 210 S.W. 2d 122 (1948). Certainly the identity of the purchaser and of the person whose note must be accepted for 80% of the total purchase price, can only be regarded as essential terms of the agreement. Inasmuch as Mrs. Reynolds signed no writing containing either of those terms, the statute was not complied with.

There remains the chancellor's finding that Woodruff's acts of part performance took the contract out of the statute. The trouble is that both the making of the contract and its part performance must be proved by clear and convincing evidence. *Hudspeth* v. *Thomas*, 214 Ark. 347, 216 S.W. 2d 389 (1949). We need discuss only the first aspect of the rule, for the record does not contain clear and convincing proof of the terms of the oral contract relied upon by Woodruff.

The complaint, as we have said, contained two inconsistent counts, one asserting that Woodruff was to buy the property from Mrs. Reynolds and the other that Havens was to buy it from her. Similar contradictions appear in the various versions of the September 11 discussion. Castleberry testified that the three men did not offer to exercise the option. Hicks testified that he told Mrs. Reynolds that Havens would exercise the option. Woodruff testified that no one mentioned the

option. Hicks said he told Mrs. Reynolds that they would need the abstract. Castleberry was not sure they talked about the abstract. Woodruff said no one mentioned it.

On the day after the September 11 discussion Hicks wrote up an agreement of sale, to be signed by the Havenses and by Woodruff. That instrument, as rewritten a week later to correct an error in the description, adds to the confusion. It designates the Havenses as the sellers and Woodruff as the buyer. It fixes the amount of the note to Mrs. Reynolds at $17,000, though the other proof indicates that it should have been $16,300. The contract makes the note payable in monthly installments of $133.13, which conforms to Hicks' testimony about the September 11 discussion; but the complaint and the lease both provide for annual installments of $1,000. The decree amends the lessee's option to purchase to conform to the terms and conditions agreed to by the parties on September 11, and then orders specific performance of both the option as so modified and the sales agreement between the Havenses and Woodruff, to which Mrs. Reynolds was not a party.

To sum up, the pleadings and proof are directed to two different theories of the case: One, that Mrs. Reynolds orally agreed to sell the land directly to Woodruff; two, that Havens in fact exercised the option and became entitled to specific performance. We might experience some difficulty in deciding whether either theory is supported by a preponderance of the evidence, but we have no hesitancy in saying that neither theory is supported by clear and convincing proof. That being the test applicable to Woodruff's cause of action, the decree must be reversed and the cause dismissed. We need not consider whether Havens' right to enforce the option to purchase for his own benefit is supported by the weight of the evidence, for in the absence of a cross appeal we cannot afford affirmative relief to an appellee.

Reversed.