Charles H. JAMES et al *v.* James A. MEDFORD et al

74-83                                          512 S.W. 2d 545

Opinion delivered July 22, 1974
[Rehearing denied September 16, 1974.]

*Robert D. Smith III* and *Phillip D. Peters,* for appellants.

*Lightle, Tedder & Hannah,* for appellees.

CARLETON HARRIS, Chief Justice. Appellants, Charles H. James and Carolyn B. James, his wife, and John L. Hammaker and Billie Hammaker, his wife, instituted suit against appellees, M. C. Medford and Bertha Medford, his wife, James A. Medford and Donna Jean Medford, his wife, and Harper Realty Company, seeking specific performance of a contract for the sale of real property, or in the alternative,

damages. The contract provided for the purchase of 120 acres of land, more or less, for the sum of $28,750.00. The court refused to grant specific performance. The chief difficulties between the parties arose because of a requirement that the seller would furnish an up-to-date survey, and because the description in the abstract was changed by the abstracter at the request of appellants. The evidence reflects that the survey provision was in the Offer and Acceptance at the time it was executed by all parties, but appellee, M. C. Medford, stated that he did not observe this condition and that he would not furnish a survey. Appellants, after acquiring information that there was a question as to the actual boundaries and thus the amount of acreage owned by M. C. Medford (and his son), insisted even more on the survey but Medford would not comply; however, the testimony reflected that appellants decided to proceed with the purchase, intending to subsequently survey the lands themselves;[1] according to James, if the survey reflected less than the 120 acres, appellants intended to sue for shortages in acreage. When appellants arrived at the office of Medford's attorney to close the transaction, Medford did not show up, and the suit for specific performance followed. The proof reflected that Medford's son, who was not a party to the contract, owned one-half interest in the property; however, this son and his wife had executed a deed conveying their interest to appellants and this deed had been turned over to the father or his attorney, though the son testified that he had not and would not agree to paying for any survey. It is not necessary to discuss this phase of the litigation, nor other issues or testimony relating thereto, since the contract relied upon is unenforceable, because of the property description appearing therein. The description reads as follows:

"120 acres more or less White County  El Paso, Arkansas"

We have held such a contract to be unenforceable. In

---

[1]The amended complaint alleged a shortage, but the court found that the evidence was insufficient to establish this alleged fact; the only testimony offered on this point was by A. P. Strauther, Jr. (the spelling of this name varies in the transcript), an abstracter, who testified that in his opinion the lands contained "somewhere around ninety-five to one hundred acres." The court held this testimony insufficient to establish a shortage.

*Routen* v. *Walthour-Flake Co.*, 221 Ark. 354, 253 S.W. 2d 208, the land to be sold was described in the contract as "16 acres—67 Highway East at Fairfax Crossing." There, no serious contention was made that the description contained in the sales contract was sufficiently definite to sustain an action for specific performance, but it was strongly contended that oral testimony should be permitted for the purpose of locating and identifying the land. We disagreed, stating:

> "We are of the opinion that appellant's contention in this matter cannot be sustained. The principal reason for this conclusion is that, since the description of the land in the sales contract is admittedly not definite, there are no words or phrases in the contract itself or in any of the correspondence which furnish a *key* whereby the land could be definitely located and described. This is the test that has been consistently announced in many decisions of this court, a few of which are noted below.

> "In the case of *Fordyce Lumber Company* v. *Wallace*, 85 Ark. 1, 107 S.W. 160, Justice McCullough, speaking for the court, said:

> > 'Before a court of equity is justified in requiring specific performance of a contract to convey land, the property which is the subject must be accurately described; the contract must disclose a description which in itself is definite and certain, or one which is capable of being made certain by other proof, the contract itself furnishing the *key* by which the property may be identified.'

Although this case has been cited many times it has never been overruled. It was distinguished in the case of *Hirschman* v. *Forehand,* 114 Ark. 436, 170 S.W. 98, where the court, in spite of an indefinite description, permitted the introduction of proof to make it more specific, but on the theory that the case was taken out of the statute of frauds because the purchaser had entered into possession and made valuable improvements. Those features, of course, are not present in the case under consideration.

"Testimony was permitted to identify lands indefinitely described in a sales agreement in the case of *Dollar* v. *Knight*, 145 Ark. 522, 224 S.W. 983, but it was allowed under the rule in the *Fordyce Lumber Company* case, *supra*.

"In the case of *Rawls* v. *Free*, 184 Ark. 737, 43 S.W. 2d 540, the court again permitted testimony for the purpose of identifying the land. The contract between the buyer and the seller consisted of letters in which the property was described as 'the property of the Ross Estate, upon which Free held a mortgage which he was then foreclosing.' In applying the rule heretofore announced, the court used this language:

'An accurate description of the lands might have been obtained from the mortgage or from the decree ordering its foreclosure, and the contract furnished the *key* by which the property might be certainly identified.' "

In *Miller* v. *Dargan*, 136 Ark. 237, 206 S.W. 319, cited by appellants, the lands were described in the contract as "their plantation located on Carson Lake in the Osceola District of Mississippi County, Arkansas, containing 520 acres, more or less", and we held this to be a good description, but it will be at once noted that the description shows a *definite* plantation owned by the defendants and where it was located, and we said that the contract was not within the operation of the statute of frauds.

Though appellants did not plead that they were placed in possession, relying only upon the description heretofore mentioned, there are two fallacies to any argument that they were placed in possession of the premises, thus taking the contract out of the statute of frauds, and permitting oral evidence as to the actual location of the property. For one thing, the "possession" exercised by appellants was of a very limited nature. Medford gave appellants permission to go upon the premises to "clean it up"; however, Mr. James testified that this work only occurred on two weekends, at which time, "We trimmed the trees, the limbs were hanging down. We picked up fence posts. We rolled up barb wire and

we mowed around the house."[2] Of course, when one is placed in possession, as that term is used when applied to taking a contract outside the restrictions of the statute of frauds, it means such possession as would permit the exclusion of others.[3] Two weekends of cleaning up debris can hardly be construed as turning the possession of the land over to appellants, particularly when we consider that appellants were in the process at the time of trying to obtain the money to make the purchase and had not, at that time, advised appellee that they were ready to close the transaction.[4] Of course, if such a loan had not been obtained, appellants could not have purchased the property and no one would contend that their entry upon the lands was of any significance.

The second fallacy is of more importance, *viz.*, possession was not taken of the entire parcel supposedly being purchased; in fact, Mrs. James testified that they walked around with Medford "attempting to show us the corners but actually we saw no stakes or markers except one." On this trip to view the land, they received information from a neighbor that the fence line was not correct and that the neighbor claimed 300 feet which (according to the fence line) appeared to belong to Medford. The evidence reflected that the farm was not entirely under fence, and Mrs. James testified that Medford did not show them the corners; one of the main questions in this litigation was the location and size of the property mentioned in the contract. Of course, appellants' reason for wanting the survey was to determine the boundaries, and if one doesn't know his boundaries, he can hardly know what property he is taking possession of, particularly so when, according to appellants, the property offered by appellees, was 20 to 25 acres less than the amount called for in the contract. A similar situation was commented upon by the Supreme Court of New Mexico in *Colcott* v. *Sutherland,* 16 P (2d) 399, where the court said:

[2] This was not the Medford home, the tract containing his home having already been sold to some other party, according to Medford, at about the same time the Offer and Acceptance with appellants was executed.

[3] See Volume 2 of Bouvier's Law Dictionary, Third Revision:

[4] The contract provided that the buyers were to secure and qualify for a loan in the amount of $24,000.00, and appellant was notified about November 4, 1972, that appellants would be ready to close a week later.

"If the matter were to be decided upon the original cross-complaint, the uncertainty of the description might present a serious obstacle to specific performance. But this difficulty yields completely to the amended pleading. Pursuant to the negotiations, and by his duly authorized agent, appellee measured and staked the tract in question and put appellant in possession. It is thus evident that the parties have agreed as to the description."

There is another problem, *viz.*, that the abstracter, Strauther, admitted that he had changed the description in the abstract at the request of appellants, Strauther stating that he had made a mistake. This was one of the chief complaints of Medford, and his concern is understandable. While the transcript is far from clear, it appears that he had already sold 75 acres of adjoining property to other persons, 40 acres being sold along about the same time the present contract was entered into. The record does not reflect where this other acreage was located; there is no plat, map, or drawing, in the transcript, and to pinpoint how Medford could certainly have been justified in being concerned about this description, Mrs. James testified that the original description contained 160 acres, but she knew this was not correct, and sought to have the abstract corrected.

It is interesting to note that Medford testified that appellant John L. Hammaker told him "to call the whole deal off", which testimony was not denied by Hammaker, neither the latter nor his wife testifying.

The matter of granting specific performance of a contract lies within the sound discretion of the trial court, and under the circumstances enumerated, we are unable to say that there was an abuse of this discretion.

The decree of the chancellor was not based upon an insufficient description, but we have held that on trial *de novo* a chancery decree will be affirmed if it appears to be correct upon the record as a whole, even though the chancellor may have given the wrong reason for his conclusion. See *Morgan* v. *Downs*, 245 Ark. 328, 432 S.W. 2d 454.

The chancellor awarded appellants the proceeds of a hay crop that had been grown by Medford, amounting to $400.00, which appears inconsistent with the decree rendered, but there is no cross-appeal.

Affirmed.

BYRD, J., dissents.