Dennis SOSSAMON *v.* E. G. DAVIS et ux

CA 80-282                                  607 S.W. 2d 405
Court of Appeals of Arkansas
Opinion delivered November 19, 1980

*Pryor, Robinson, Taylor & Barry*, by: *Ben T. Barry*, for appellant.

*Franklin Wilder*, for appellee.

ERNIE E. WRIGHT, Chief Judge. In December, 1979, Appellant Dennis Sossamon filed suit against appellees for specific performance of a written offer signed by appellees and delivered to appellant on December 8, 1977, to sell real estate. The acceptance of the offer appearing on the form was not signed by appellant as buyer but was orally agreed to by him. The offer concerned certain improved real estate appellant was then occupying as a tenant pursuant to a lease agreement with appellees.

The trial court denied specific performance and we affirm the decree.

For reversal appellant argues the trial court erred in finding appellant failed to sustain his burden of proof and various other points, but we discuss only the matters we find to be dispositive of the case.

In August, 1976 appellant leased the property in question from appellees for a period of three years, and during all times here relevant appellant has had possession of the property as a tenant, and has paid monthly rent in keeping with the rental agreement of the parties. Appellant approached appellees about buying the property, and on August 8, 1977, appellees signed an offer to sell the real estate to appellant for $45,000, payable $1,000 earnest money on acceptance of the offer, $13,000 in cash with the $1,000 earnest money to be credited on the $13,000 cash payment, and the balance of $32,000 payable $500 monthly over a period of 88 months, including 9 percent interest. Appellant

did not execute the lease but did orally agree to the terms of the offer on the date the signed offer was delivered to him and gave Appellee, Mr. Davis, his personal check for $1,000, with notation thereon, "earnest check for property." When the check was delivered to appellee Davis, appellant did not have the funds in the bank to make the check good and the check was never cashed. Davis testified appellant was to sign the offer and acceptance and return it to him, and he would then furnish appellee a copy, but appellant never did sign the offer.

The "Offer and Acceptance", signed only by appellees as sellers contained no specific time for payment of the $13,-000 down payment. Both parties testified the agreement contemplated the transaction would be closed within a reasonable length of time. The understanding was that appellant was to secure a loan to close the transaction.

In early 1978, appellant told appellees he was unable to obtain financing from Savings & Loan. Later in the spring of 1978, appellant told appellees he could obtain financing from the VA if appellees would allow VA to have a first mortgage on a part of the property. Appellees rejected this proposal.

Early in 1979, appellee Davis advised appellant he preferred not to close the deal. Up to that time appellant had never offered to close the transaction except on some basis under which appellees would be required to relinquish a first security interest in some prt of the property.

In September, 1979, a Mr. Finsel indicated interest in the property and told Appellee Davis the property ought to be worth $60,000. Shortly thereafter Davis told appellant he couldn't sell him the property for less than $65,000, and thereafter in December, 1979, appellant filed suit for specific performance. At the time of trial in March, 1980, appellant continued to occupy the property as tenant paying monthly rent to appellees, although the written lease had expired in August, 1979.

Appellant testified that soon after appellees gave him the offer to sell and he had given the $1,000 check for earnest money, he spent $1,000 for masonry work and installing an

additional door in the business building on the property. The improvement was for the convenience of appellant's business and not an unusual type improvement for a business tenant to make. Later appellant paid $60 for an appraisal in connection with a loan application to Central Bancshares. This was the only formal loan application appellant has ever made for the purpose of closing the transaction, and the loan application was rejected. In 1979, appellant proposed to appellees that he could pay the $13,000 cash payment with a first mortgage going to a Mr. Rice and a Mr. Engeles or he could pay the whole $45,000. Appellee Davis declined to accept an arrangement under which appellees would have a second mortgage for the deferred balance, and declined because of tax consequences to accept the proposal that he accept all of the sale price in cash. Appellant did not come forward with any concrete proposal to close the purchase that would have been in keeping with the terms of the contract. The contract did not specify that appellees would accept a second mortgage on all or part of the property as security for the deferred part of the sale price nor did it obligate them to accept cash in full at closing. There was no evidence other than appellant's vague testimony that appellant had a loan commitment from any source that would enable him to close the purchase in keeping with the terms of the offer to sell, viz: that is by payment of $13,000 cash and appellees retaining title or having a first mortgage to secure the deferred balance to be paid with interest over 88 months.

Appellees have received no money on the $1,000 earnest money recited in the offer and appellant's $1,000 check was never cashed. Appellant testified he expected Appellee Davis to hold the $1,000 check until the transaction was closed, but David denied there was any understanding to that effect.

The court found appellant had failed to prove his case by a preponderance of the evidence, that he had never performed the conditions he should have performed to place himself in a position to entitle him to specific performance, that appellant had not paid the $1,000 earnest money, but had merely assumed appellees would hold his check until some unknown and unspecified closing date. A decree was entered dismissing the complaint.

After carefully reviewing all of the evidence, we conclude the chancellor was correct in finding appellant had failed to prove facts by a preponderance of the evidence establishing he is entitled to specific performance. The burden was upon appellant to show substantial compliance with the obligations imposed upon him by appellee's written offer and appellant's oral acceptance. Appellant did not pay the $1,000 earnest money, but gave a check which was not good at the time it was delivered and it has never been cashed. Appellant has never at any time offered to close in keeping with the terms of the written offer. *Moody* v. *Kahn*, 174 Ark. 1072, 298 S.W. 353 (1927).

Appellant argues in his brief that a reasonable man would assume that it was likely or possible in order for the appellant to obtain a loan that he would need to give a first mortgage on the property to a lender, and that appellees were obliged to accept a second mortgage on the real estate, or some part of it, as security for the deferred balance. Appellant cites no authority that supports his argument, and we reject the contention. There was no evidence of any agreement that appellees would accept a second mortgage, and the law implies no such agreement.

The appellant was not diligent in seeking specific performance. He filed suit two years after the offer to sell was made. The law is well settled that one seeking specific performance must act with diligence. Even though the agreement did not specify a time for performance, both parties testified the agreement contemplated a reasonable time, and the law imposes an obligation to comply with the contract within a reasonable time. *Bracy* v. *Miller*, 169 Ark. 1115, 278 S.W. 41 (1925). *Smith* v. *Carter*, 213 Ark. 937, 214 S.W. 2d 64 (1948). Appellant failed to offer to close the transaction in keeping with its term within a reasonable time, and did not act with diligence in seeking performance. He paid nothing to appellees on their offer to sell, and by this suit seeks to profit from the interim increase in the value of the property. Equity will not grant specific performance unless the one seeking relief shows he has all times been ready, able and willing to perform in keeping with the agreement, and has acted with promptness in seeking specific performance. Appellant failed

to show he met these requirements. *Welbörne* v. *Preferred Risk Insurance Co.* 232 Ark. 828, 340 S.W. 2d 586 (1960).

The chancellor made findings of fact against appellant and we do not reverse findings of the trial court unless clearly erroneous. Rule 52, Ark. Rules of Civil Procedure. We cannot say the chancellor's findings are clearly erroneous, but on the contrary we conclude his findings are well supported by the evidence.

As we review equity appeals de novo we affirm a correct decision of the chancellor if we conclude the record shows appropriate reasons for affirmance, even though the reason was not stated by the trial court as a basis for the decision. *James* v. *Medford*, 256 Ark. 1002, 512 S.W. 2d 545 (1974). There is an additional reason we affirm the decree denying specific performance.

Appellees denied there was a valid contract. This is sufficient to raise the defense of the statute of frauds. *Stanford* v. *Sager*, 141 Ark. 458, 217 S.W. 458 (1920).

The written offer upon which appellant relies does not contain a definite description of the real estate. The offer describes the real estate only as Lots 11 & 12, Block 1, Hendrix Addition. There is no indication as to what city, county or state the property is situated in. Unquestionably the property could be identified by oral testimony, but a contract for the sale of land comes within the statute of frauds, Ark. Stat. Ann. § 38-101 (Repl. 1962), and must therefore be in writing to be enforceable. *Reynolds* v. *Havens*, 252 Ark. 408, 479 S.W. 2d 528 (1972). A definite description of the land that is the subject matter of the agreement is one of the essential elements that must be in writing before a court of equity will grant specific performance. Here there is not a sufficient key in the written offer by which the property can be definitely identified and oral testimony is not permitted to identify the land. *James* v. *Medford, supra.* It is true that partial performance of a contract by payment of a part of the purchase price and placing a buyer in possession of land pursuant to an agreement of sale and purchase is sufficient to take the contract out of the statute of frauds. Such did not occur here as

appellant paid nothing and was at all times relevant in possession of the property as a tenant. He was never placed in possession pursuant to any agreement for sale or purchase. *Thom* v. *Geyer*, 254 Ark. 716, 497 S.W. 689 (1973).

Affirmed.