## FARMERS HOME MUTUAL FIRE INSURANCE COMPANY
### v. BANK of POCAHONTAS

03-408                                           129 S.W.3d 832

Supreme Court of Arkansas
Opinion delivered November 20, 2003

*Stidham Law Firm, P.A.*, by: *Daniel T. Stidham*, for appellant.

*John C. Throesch*, for appellee.

Tom Glaze, Justice. Appellant Farmers Home Mutual Fire Insurance Company ("Farmers") has petitioned for review from a court of appeals opinion affirming the trial court's ruling in favor of the appellee Bank of Pocahontas ("the Bank"). We are asked to interpret the phrase "on demand" in a standard mortgage clause in a home insurance policy.

The facts are as follows: Donna Hawkins obtained a mortgage loan from the Bank in order to purchase a home. The Bank approved the loan and issued a standard real estate mortgage that required an insurance policy naming the Bank as loss payee. Hawkins obtained an insurance policy through Farmers; the policy contained a mortgage and loss payable clause in favor of the Bank. In 1998, Hawkins mailed in her premium check to Farmers, but the check was returned marked "insufficient funds." On May 26,

1998, Farmers sent Hawkins and the Bank a letter advising that Farmers would deposit the check again on May 31, 1998.

When Farmers redeposited the check, it bounced again. At that time, Farmers sent Hawkins and the Bank another letter, dated June 9, 1998, stating that the purpose of the letter was "to advise in writing that this policy has lapsed in coverage due to non-payment of premium." The letter went on to state that the policy could be reinstated provided that Hawkins submitted a money order or cashier's check for the appropriate amount. Further, the letter informed Hawkins and the Bank that "[i]f no response has been received on or before June 18, 1998, we will assume that this coverage is not desired and all coverage will terminate permanently." On June 23, 1998, Farmers wrote again to Hawkins, the mortgagor, and the Bank, the mortgagee, to "advise in writing that all coverage did terminate permanently on June 18, 1998."

Hawkins's home was entirely destroyed by fire on September 27, 1998. On October 12, 1998, Farmers notified the Bank that it would not pay the claim, contending that the insurance policy had been cancelled. The Bank made a demand on Farmers to satisfy the mortgage on the insured premises, and Farmers persisted in its refusal to pay the claim. As a result, the Bank sued Farmers, alleging that Farmers should be required to pay because (1) the Bank never received Farmers' notice of cancellation, (2) the notice did not comply with the terms of the policy, and (3) Farmers never made a "demand" for payment from the Bank. In the alternative, the Bank argued that even if the notice was proper, and Farmers had effectively cancelled the policy on June 18, 1998, the policy was reinstated on June 29, 1998, via an "amended coverage endorsement" issued by Farmers.

At a bench trial, the trial court found in the Bank's favor, and awarded the Bank $23,500, plus a 12% penalty and $4,000 in attorney's fees. The court disagreed with the Banks' argument that it had not been properly notified of the cancellation, finding that there was sufficient evidence that the notice of cancellation had been mailed to the Bank. However, the court found that Farmers never made a "demand" on the Bank for payment, in accordance with the terms of the policy. The court rejected Farmers' argument that the policy language regarding a demand permitted Farmers to make demand only on Hawkins and not the Bank. The court reasoned that "at the least," the policy language was ambiguous, which required resolution in favor of the insured. The court

further provided that, notwithstanding the above arguments, it would otherwise find that coverage existed on the property, because of a "declarations of coverage" page that had been generated by Farmers, which appeared to indicate that coverage on Hawkins's property was still in effect. From the court's holdings, Farmers appeals and raises three points.

■ In bench trials, the standard of review on appeal is not whether there is any substantial evidence to support the finding of the court, but whether the judge's findings were clearly erroneous or clearly against the preponderance of the evidence. *Crooked Creek, III, Inc. v. City of Greenwood*, 352 Ark. 465, 101 S.W.3d 829 (2003); *Reding v. Wagner*, 350 Ark. 322, 86 S.W.3d 386 (2002). Disputed facts and determinations of the credibility of witnesses are within the province of the factfinder. *Ford Motor Co. v. Ellison*, 334 Ark. 357, 974 S.W.2d 464 (1998).

■ Arkansas' law regarding the construction of an insurance contract is well-settled. The language in an insurance policy is to be construed in its plain, ordinary, popular sense. *Norris v. State Farm Fire & Cas. Co.*, 341 Ark. 360, 16 S.W.3d 242 (2000). If the language of the policy is unambiguous, we will give effect to the plain language of the policy without resorting to the rules of construction. *Harasyn v. St. Paul Guardian Ins. Co.*, 349 Ark. 9, 75 S.W.3d 696 (2002); *Elam v. First Unum Ins. Co.*, 346 Ark. 291, 57 S.W.3d 165 (2001); *Western World Ins. Co. v. Branch*, 332 Ark. 427, 965 S.W.2d 760 (1998). On the other hand, if the language is ambiguous, we will construe the policy liberally in favor of the insured and strictly against the insurer. *Harasyn, supra.* Whether the policy language is ambiguous is a question of law to be resolved by the court. *Norris, supra.*

■ The mortgage clause of the insurance policy issued to Donna Hawkins contained the following relevant policy language regarding the mortgagee:

> This clause applies only to the mortgagee ... and does not affect the insured's rights or duties under this policy. Loss, if any, under this policy, shall be payable to the mortgagee. . .named on the Declarations page of this policy, as interests may appear, under all present or future mortgages upon the property herein described in which the aforesaid may have an interest as mortgagee . . . , in order of precedence of said mortgages, and *this insurance as to the interest of*

> *the mortgagee . . . only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property . . . ; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee . . . shall, on demand, pay the same.* (Emphasis added.)

This language constitutes a so-called "standard mortgage clause." Both this court and the court of appeals have held that, generally, a standard mortgage clause serves as a separate contract between the mortgagee and the insurer, as if the mortgagee had independently applied for insurance. *Dalrymple v. Royal-Globe Ins. Co.*, 280 Ark. 514, 659 S.W.2d 938 (1983); *Columbia Mut. Ins. Co. v. Home Mut. Fire Ins. Co.*, 74 Ark. App. 166, 47 S.W.3d 909 (2001). Thus, the rights of a named mortgagee in an insurance policy are not affected by any act of the insured, including improper and negligent acts. *Dalrymple, supra.*

Ths issue in this case centers on the last sentence of the standard mortgage clause, wherein the policy provides that "in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee . . . shall, on demand, pay the same." Farmers argues that the phrase "on demand" is discretionary, and argues that no demand upon the Bank was necessary in order to cancel Hawkins's policy for failure to pay the premium.[1]

██ However, we conclude that to give the phrase "on demand" the meaning that Farmers ascribes to it contradicts the purpose and intent of the standard mortgage clause. When a standard mortgage clause is utilized, "the mortgagee's rights under the policy are those of an additional 'insured' and not merely an interest that is derived from the mortgagor either as the designated

---

[1] In support of its argument, Farmers relies on *Fullerton v. McCord*, 339 Ark. 45, 2 S.W.3d 775 (1999). There, this court said that extradition of certain non-fugitives is at the discretion of the governor, based on language in Ark. Code Ann. § 16-94-206 (1987), that provides that the Governor "may also surrender, on demand of the executive authority of any other state any person in this state charged in such other state . . . with committing an act in this state." *See Fullerton*, 339 Ark. at 49. However, Farmers fails to realize or acknowledge that the language in this statute making extradition discretionary with the Governor is the word "may," not the phrase "on demand." *See, e.g., Williams v. State*, 347 Ark. 728, 67 S.W.3d 548 (2002) (the word "may" is usually employed as implying permissive or discretionary, rather than mandatory, action or conduct and is construed in a permissive sense unless necessary to give effect to an intent to which it is used); *Marcum v. Wengert*, 344 Ark. 153, 40 S.W.3d 230 (2001) (same).

recipient of the insurance proceeds or as an assignee of a mortgagor's chose in action against the insurer." Keeton & Widiss, *Insurance Law* § 4.1(b)(3), at 295. *See also* 4 *Couch on Insurance*, § 65:74 (3d ed) (under a standard mortgage clause, the mortgagee or mortgage lender under a deed of trust is deemed to be the equivalent of a named insured). Further, the plain language of the clause provides that policy "shall not be invalidated by any act or neglect of the mortgagor or owner" or the property. Thus, to cancel the policy for the mortgagor's failure to pay premiums, without giving the mortgagee the opportunity to pay the premiums and continue the policy, is to deprive the mortgagee, who is an additional named insured, of its rights under the contract. Here, because Farmers failed to demand payment of the premiums from the Bank prior to canceling the contract, the policy was still in effect.

Farmers' second argument on appeal is its alternative suggestion that, if demand on the mortgagee was required under the terms of the policy, then the three letters mailed out to the mortgagee regarding nonpayment of the premium were sufficient to constitute a demand that the premium be paid by the mortgagee. On this issue, the trial court found that Farmers offered no evidence to support a conclusion that a "demand" had been made on the Bank for payment of the premium.

The relevant policy language in the mortgage clause regarding cancellation provides that Farmers "reserve[s] the right to cancel this policy at any time as provided by its terms but in such case the mortgagee . . . shall be entitled to the same notice provided to the insured, as specified in the Policy Conditions for Cancellation." The conditions for cancellation, in turn, provide that "[i]f the premium and policy fees have not been paid when due, [Farmers] may cancel by giving [the insured] notice at least 10 days before the cancellation is to take effect." However, read in conjunction with the "on demand" language discussed above, Farmers was still required to make a demand on the Bank before the Bank's insured interest could be impaired by Hawkins's neglecting to pay any premium due.

Thus, the issue is whether the three letters Farmers sent to Hawkins, with copies to the Bank, constituted a "demand" on the Bank for payment of the premiums. The first letter, dated May 26, 1998, simply informed Hawkins that the check she sent as payment had been returned by her bank for insufficient funds, and asked her

to make arrangements with the bank for the check to clear when it was presented for payment again. The second letter, dated June 9, 1998, informed Hawkins that her check had once more been returned for insufficient funds, and advised Hawkins that her policy had lapsed in coverage due to nonpayment of premium. This letter also provided that the policy could be reinstated if a payment was remitted; however, if Farmers received no response before June 18, it would terminate coverage permanently. Finally, the third letter, dated June 23, 1998, was "to advise in writing that all coverage did terminate permanently on June 18, 1998."

A demand is variously defined as "[t]he assertion of a legal right," "[a]n imperative request preferred by one person to another, under a claim of right, requiring the latter to do or yield something or to abstain from some act," or a "[r]equest for payment of debt or amount due." *Black's Law Dictionary* 429 (6th ed. 1990). By the terms of the policy discussed above, Farmers was required to make a demand on the Bank for payment of any premiums that the insured had neglected to pay.

The case of *American Mercury Ins. Co. v. Inland-Western Finance Co.*, 433 P.2d 60 (Ariz. App. 1967), is directly on point. In that case, the owner of an airplane, Widmer, insured the plane with a policy containing a standard mortgage clause protecting the finance company that loaned money to Widmer, who borrowed the money for the plane. Widmer failed to pay a number of premiums, and each time, the insurance company sent him a letter, copied to the finance company, informing him that his policy would be cancelled if the premium was not paid. A final cancellation notice was sent to Widmer and the finance company; when Widmer failed to pay the premium, the insurance company cancelled the policy. A few months later, the airplane was destroyed, and the insurance company refused to pay any part of the loss. The finance company sued, and the trial court found in favor of the finance company.

On appeal, the issue presented to the Arizona court was "whether the copy of the notice to the insured of possible future cancellation of the insurance policy is a sufficient demand for payment upon the mortgagee named in the breach of warranty endorsement so the insurance company, since no premium was received, could effectively cancel, without any further action, the breach of warranty endorsement as well as the underlying policy of insurance." *American Mercury*, 433 P.2d at 61-62. Noting first that

the standard mortgage clause "constituted a separate contract between [the insurance company] and [the finance company]," the Arizona court held as follows:

> An insurer's right to cancel a policy containing a standard mortgagee clause on the mortgagee's failure, on demand, to pay premiums can be exercised only after strict compliance by the insurer with the terms of the agreement between the insurer and the mortgagee. [Citation omitted.] In the present case, a separate premium was paid to the insurance company for the breach of warranty endorsement. A separate contract of insurance was created between [American Mercury] and the [finance company] and the terms of the contract had to be strictly complied with. The notice of cancellation mailed out by [the insurer] did not meet the requirement of strict compliance. The notice did not demand payment of the premium by the [finance company]. It was directed to Mr. Widmer with a notation that a copy was being sent to [the finance company] and it merely stated that the policy would be cancelled at a future date if the premium was not paid. Under the terms of the endorsement, the [finance company] was entitled to a specific demand for payment.

*American Mercury*, 433 P.2d at 62.

Our court is faced with the same situation that the Arizona court encountered in *American Mercury*. Here, the contract of insurance between Farmers and the Bank provided that the Bank was entitled to a specific demand for payment in the event that Hawkins neglected to pay her premiums. None of the three letters specifically demanded that the Bank remit payment of the premiums in lieu of Hawkins's payment. Because the plain language of the cancellation provisions fixed by an insurance policy must be strictly followed, *see Grubbs v. Credit Gen. Ins. Co.*, 327 Ark. 479, 939 S.W.2d 290 (1997), and Farmers failed to strictly comply with its own terms regarding notification and demand, the trial court did not err in concluding that the three letters copied to the Bank were not sufficient to put the Bank on notice that a demand for payment was being made of it.

Because we affirm on the foregoing points, we do not address or discuss Farmers' third point on appeal.

Affirmed.