ROBERT J. GLADWIN, Judge
This appeal of a divorce decree returns after we originally dismissed the case for lack of a final order.[1] Evelyn Chism appeals the judgment in favor of her ex-husband, James R. Chism (Jim), in the amount of $118,721.40. Jim cross-appeals from the circuit court's decision declining to set aside certain deeds Evelyn allegedly obtained through undue influence over him. The parties' adult son, James Gregory Chism (Greg), appeals from that part of *396 the decree awarding his parents money judgments for a loan for the purchase of a vehicle and the purchase of a home and real property. We reverse the decree awarding Jim one-half of Evelyn's income; affirm the circuit court's refusal to set aside the conveyances; affirm the judgment against Greg for the money he borrowed to the purchase the vehicle; and reverse the decree as to Greg's oral agreement to purchase a house and five acres.
This was the second time Evelyn and Jim had married each other. Their first marriage ended in divorce in 1987. They remarried in 1993. The parties separated in early January 2014, and Evelyn filed her complaint for divorce on January 23, 2014. Evelyn amended her complaint to seek an unequal division of the parties' property. Jim answered. He filed a counterclaim, claiming that Evelyn had kept all the money she had earned from her employment and her retirement benefits, which he asserted was marital property separate from that of the parties' joint accounts, and he asked for an accounting. He sought to set aside two conveyances-a warranty deed and a mineral deed-made on June 12, 2012, on the basis that Evelyn exerted undue influence over him. Jim filed a third-party complaint against the couple's two children, Greg and Dena Lynn Smith, asking the court to set aside the June 12, 2012 conveyances in which the children had interests.
A trial was held over two days in July and August 2015. In October 2015, the circuit court entered its letter opinion deciding the case. After the court ruled that the pleadings would be amended to conform to the proof, the court granted Evelyn a divorce and distributed certain real property to Jim and Evelyn as his and her separate property. The court ordered all marital property, real and personal, with the exception of a marital mineral interest, sold and the proceeds divided equally. The court found that any earnings and retirement benefits Evelyn had earned from her employment with the United States Postal Service (USPS) were marital property and awarded Jim half of those benefits, as well as any retirement benefits Evelyn had drawn during the pendency of the divorce. The court awarded Evelyn and Jim a judgment against Greg for $97,500 based on an oral agreement to buy five unspecified acres and a house from Jim and Evelyn. Evelyn and Jim were each awarded one-half of that amount. The court further entered judgment against Greg in favor of Evelyn and Jim for money used to pay a truck loan, with Evelyn and Jim each awarded approximately $11,500. The court further found that Evelyn, Jim, and Greg were tenants in common of a reservation of the mineral interests in which the surface interest was conveyed to the daughter, Dena. The court also found that Evelyn, Jim, and Greg were tenants in common of a reservation of the mineral interests in which the surface interest was conveyed to Evelyn and Greg as joint tenants with right of survivorship. Other tracts were found to be marital property, with Evelyn and Jim reduced to tenants in common, and the court ordered the property sold. On Jim's counterclaim seeking to set aside certain conveyances on the ground that Evelyn exercised undue influence over him, the court found that Jim failed to show that Evelyn had occupied a position of dominance over him and refused to set aside the conveyances.
The court found that Evelyn's earnings and retirement benefits from the USPS were marital property, that she had kept the money in a separate account in her separate name, and that she failed to account for this money. Jim was awarded a judgment for approximately $118,000, representing *397 one-half of the sums she had earned.
After some revision and correspondence between the court and counsel, the circuit court entered its decree on December 17, 2015. The court also entered an agreed order staying enforcement of the money judgment against Evelyn until the appeal could be decided. The court also entered a qualified domestic relations order to effectuate the division of Evelyn's retirement benefits.
We dismissed the appeal from those orders on June 8, 2016, for lack of a final order. Chism I , supra. On remand, the circuit court entered an order that included a Rule 54(b) certificate to resolve the finality issues that were raised in Chism I. See Ark. R. Civ. P. 54(b). This order granted judgments in favor of Jim for his payment of marital expenses such as mortgage, utility payments, taxes, insurance, and the like. It also provided that Jim was entitled to one-half of Evelyn's gross monthly retirement benefits and that he would have judgment for that amount through the sale of the parties' property. Later, the circuit court entered an order disposing of Jim's third-party complaint attempting to set aside the conveyances of a surface interest to Greg in a further effort to resolve any potential finality issues. The court ruled that the claim would be denied for the reasons stated in the original decree. The order also included a Rule 54(b) certificate. All three parties appeal.
I. Standard of Review
We review traditional cases of equity, such as domestic-relations proceedings, de novo. Hurtt v. Hurtt , 93 Ark. App. 37, 216 S.W.3d 604 (2005). Likewise, we review a circuit court's decision to grant or deny a petition to set aside a deed de novo, but we will not reverse unless the court's findings are clearly erroneous. Lyons v. Lyons , 13 Ark. App. 63, 679 S.W.2d 811 (1984). We defer to the superior position of the circuit court to evaluate the witnesses and their credibility. Id.
II. Arguments on Appeal
On appeal, Evelyn argues that there is insufficient evidence to support a finding that she disposed of her employment earnings between 2002 and 2013 with the intent to defraud Jim and that the circuit court erred in placing the burden on her to prove that she had not spent the funds in an attempt to defraud Jim. On cross-appeal, Jim argues that Evelyn exercised undue influence over him and that certain conveyances should be set aside. In his separate appeal, Greg argues two main points. The first contains several subpoints in which he contends that the circuit court erred in entering a judgment against him on an oral contract for the purchase of real property. Greg further argues that it was error for the circuit court to enter a judgment against him for the balance of a truck loan.
A. Evelyn's Appeal
At trial, Jim presented an exhibit prepared from the parties' tax records showing that Evelyn's earnings and retirement income from her job with the USPS from 2002 to 2013 were approximately $237,000. Evelyn testified that all this money went into an account at Regions Bank that she had opened in her separate name while the parties were divorced. She also testified that the balance was approximately $20,000 just before the parties' separation. Although Jim acknowledged that he was aware of this account, the parties disputed whether Evelyn spent any of her funds on household or other marital expenses. In its decree, the circuit court found that Evelyn
*398 received earnings and retirement income ... from her employment with [USPS] for the years 2002 through 2013 which she held in her sole and separate name and that said funds were unaccounted for by [Evelyn] throughout these proceedings with said earnings and retirement income together totaling $237,442.98.
[Jim] is awarded a judgment against [Evelyn] for one-half of the earnings and retirement income in the amount of $118,721.49.
Evelyn argues that the circuit court erred in awarding Jim a judgment for one-half of the sums she earned while employed with the USPS. Evelyn also argues that she had the right to hold her income in a separate account and to spend her money as she saw fit, as long as she did so in good faith and without the intent to defraud Jim. She further argues that Jim failed to present any evidence whatsoever to prove that she intended to defraud him in any way. We agree.
Arkansas law does not require parties to a divorce to account for every sum spent during a marriage. Our courts have held that a spouse has the right to transfer his or her property, with or without consideration, as long as the spouse does so in good faith and without the intent of defrauding the other spouse. See Skokos v. Skokos , 332 Ark. 520, 968 S.W.2d 26 (1998) ; Wainwright v. Merryman , 2014 Ark. App. 156, 2014 WL 988977. A spouse is not entitled to be reimbursed in a divorce proceeding for every nonconsensual transfer of marital funds made by the other spouse in the absence of proof of an intent to defraud. Skokos , supra.
Here, there was absolutely no evidence presented, nor did Jim even argue, that Evelyn concealed or disposed of her income in an attempt to defraud him, and the circuit court made no such finding. Neither party was able to say how much, if any, money remained in the Regions account at the time of trial. The circuit court had already equally divided this account based on the testimony as to the balance at the time of separation. Given the lack of evidence of any intent by Evelyn to defraud Jim, the circuit court clearly erred in awarding Jim one-half of Evelyn's earnings and retirement income.
B. Jim's Cross-Appeal
While the parties were divorced, Jim purchased a 236-acre farm with the mineral rights. In 2007, Jim agreed to sell the surface interest to Charles Reaves. Evelyn joined the conveyance. After Reaves died, his estate could not continue to make the payments, and the bank holding the mortgage instituted foreclosure proceedings. In September 2009, Jim and Evelyn purchased the surface interest. The mineral interest remained solely in Jim's name.
According to Jim, following the reacquisition of the surface interest, Evelyn began a relentless campaign to have her name added to the mineral interest. On June 12, 2012, two deeds were executed. The first, a warranty deed, conveyed an interest in the surface to Greg, with all three parties becoming joint tenants with right of survivorship. The other deed, executed by Jim, Evelyn, and Greg, conveyed a life estate in the minerals to Jim and Evelyn, with Greg and Dena having the remainder interest.
Jim sought to set aside these conveyances, arguing that Evelyn had exerted undue influence over him. The circuit court found that
[a]lthough there was much testimony given by [Jim] as to the actions of [Evelyn] and how she constantly brought the matter of these lands and minerals up for discussion, the court is not convinced *399 that the influence exerted by [Evelyn] was sufficient to show that [Evelyn] occupied such a superior position of dominance or advantage as would imply a dominating influence over [Jim]. Therefore, the court refuses to set aside the conveyances in these exhibits and finds that they shall stand.
In his brief, Jim discusses what he contends are examples of Evelyn's exercise of undue influence over him. At trial, he introduced evidence attempting to show that he was susceptible to such influence because he suffered from cancer and other health problems. Evelyn presented testimony from herself and her children that Jim was the dominant figure in the relationship and that Jim made all the financial decisions for the couple.
Citing Young v. Young , 101 Ark. App. 454, 278 S.W.3d 603 (2008), Jim argues that the circuit court erred in failing to set aside the conveyances because once a spouse has shown that a confidential relationship has existed with the other, and that the other spouse was the dominant party in the relationship, it is presumed that a transfer of property from the former to the latter was invalid due to coercion and undue influence. He further argues that the circuit court should have required Evelyn and Greg to come forward with evidence to rebut the presumption.
The Young court cited Myrick v. Myrick , 339 Ark. 1, 2 S.W.3d 60 (1999), in support of its discussion of the presumption of invalidity. In Myrick , the supreme court pointed out that "the simple existence of a dominant party in the relationship does not, in and of itself, invoke the presumption of invalidity; rather, the party claiming duress or coercion must establish further sufficient evidence to invoke the presumption, after which the burden to prove otherwise rests with the dominant party." 339 Ark. at 8, 2 S.W.3d at 64. Here, the circuit court found that Jim failed to meet the first prong of adequately proving dominance by Evelyn. Therefore, presumption of invalidity was never raised, and the burden never shifted to Evelyn to prove the voluntariness of the conveyances.
The circuit court did not err in refusing to set aside the conveyances.
C. Greg's Separate Appeal
We turn now to Greg's argument that the circuit court erred by entering judgment against him on an oral contract for the purchase of real property.
All three parties testified that there was an oral agreement for Greg to purchase a house and five acres out of the 236-acre farm. Greg was to pay his parents $1,000 a month, interest free, for ten years. He paid $22,500 toward the purchase. None of the parties presented evidence as to where the five acres were located, nor was the court asked to determine what five acres Greg had purchased. Jim testified that the specific property to be sold would be surveyed and the boundaries marked once Greg had finished paying for the land. In his third-party complaint against Greg, Jim did not seek judgment against Greg for this debt. Neither did Jim specifically ask during his testimony for judgment against Greg for the unpaid balance. Also, Jim's counsel argued in closing that there was no agreement; but if there were, it was unenforceable:
I don't think the court can do anything with [the oral agreement]. The court can't make an agreement. There's no agreement, first place, and the court can't make an agreement. It's an oral agreement, and we all know that if an agreement is to convey land, it must be set out in writing. So, I don't think the court can do anything on the five acres.
*400 Nevertheless, the circuit court found that Greg had paid only $22,500 of the purchase price, leaving a remaining balance of $97,500. The court reduced this amount to judgment, with Evelyn and Jim each awarded half.
On appeal, Greg contends that the circuit court erred and argues four subpoints. Greg is correct. Neither Jim nor Evelyn asked the court to enforce the oral agreement. To the contrary, Jim's counsel clearly acknowledged that Jim was not requesting such relief and stated that the court could not grant such relief because of the statute of frauds. The court did not make a finding as to the statute of frauds, but the specific five acres involved are not in any way identified and no means of identification are furnished, as required by the statute. See James v. Medford , 256 Ark. 1002, 512 S.W.2d 545 (1974). Thus, the circuit court erred in granting judgment for the unpaid purchase price because to do so is to enforce a contract otherwise barred by the statute of frauds.
For his second point, Greg argues that the circuit court erred in granting judgment in favor of his parents for the money loaned for his vehicle. He argues that his mother had forgiven the loan on behalf of both herself and Jim.
It is undisputed that Jim wrote a check on his and Evelyn's joint account for approximately $25,000 and gave it to Greg to pay off his vehicle. Greg made some payments to his parents before ceasing to make the payments altogether. The circuit court found that the outstanding balance owed was $23,552.64. Evelyn and Jim were each awarded judgment against Greg in the amount of $11,776.32.
At trial, Evelyn asked for one-half of the $26,000, which originated in her retirement account and that was ultimately loaned to Greg to pay for his vehicle. She also testified that she told Greg he did not have to repay the money. She said she had discussed the matter with Jim before telling Greg. Although he acknowledged that Evelyn told Greg the loan was forgiven, Jim denied that he told Greg he no longer needed to pay for the vehicle. He also said he intended for Greg to pay the money back.
Although Evelyn testified she told Greg the loan was forgiven, the circuit court was not required to believe her testimony. Disputed facts and determinations of the credibility of witnesses are within the province of the fact-finder. Farmers Home Mut. Fire Ins. Co. v. Bank of Pocahontas , 355 Ark. 19, 129 S.W.3d 832 (2003). The fact-finder is free to believe or disbelieve the testimony of any witness, even if it is uncontradicted or unimpeached. See Farm Bureau Mut. Ins. Co. of Ark., Inc. v. Foote , 341 Ark. 105, 14 S.W.3d 512 (2000). It is axiomatic that the testimony of an interested party is never considered uncontroverted but is instead considered to be disputed as a matter of law. Ester v. Nat'l Home Ctrs., Inc. , 335 Ark. 356, 981 S.W.2d 91 (1998). We cannot, therefore, say that the circuit court's ruling awarding judgment against Greg for the vehicle loan is clearly erroneous.
III. Conclusion
In conclusion, we reverse the decree awarding Jim one-half of Evelyn's income; affirm the circuit court's refusal to set aside the conveyances; affirm the judgment against Greg for repayment of the loan to pay off his vehicle; and reverse the order enforcing Greg's oral agreement to purchase the house and five acres.
Affirmed in part and reversed in part on direct appeal; affirmed on cross-appeal.
Gruber, C.J., and Abramson, J., agree.

Chism v. Chism , No. CV-16-337 (June 8, 2016) (appeal dismissed) (Chism I ).