

# ARKANSAS COURT OF APPEALS
DIVISION III
**No.** CV–16–306

| | |
|---|---|
| SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY<br>APPELLANT | OPINION DELIVERED: NOVEMBER 30, 2016<br><br>APPEAL FROM THE ASHLEY COUNTY CIRCUIT COURT [NO. 02CV-15-82-3] |
| V. | HONORABLE ROBERT BYNUM GIBSON, JR., JUDGE |
| SHELTER MUTUAL INSURANCE COMPANY AND TOMMY ROBERSON<br>APPELLEES | REVERSED ON DIRECT APPEAL; CROSS-APPEAL RENDERED MOOT |

**ROBERT J. GLADWIN, Chief Judge**

The Ashley County Circuit Court considered competing motions for summary judgment from Southern Farm Bureau Casualty Insurance Company (Farm Bureau) and Shelter Mutual Insurance Company (Shelter) and ordered that they were equally liable for uninsured motorist (UM) coverage. On appeal, Farm Bureau argues that the trial court erred in holding that there was coverage under its policy, and on cross-appeal, Shelter contends that, while the trial court correctly determined that there was coverage under the Farm Bureau policy, it erred in finding the coverage should be divided equally instead of by pro rata distribution as set forth in Shelter's policy. We reverse on direct appeal, thereby holding that the issue on cross-appeal is moot.

I. *Facts*

Tommy Roberson was driving a vehicle owned by a third party when it was rear-ended by an uninsured vehicle, forcing his car into the back of the vehicle in front of him. Roberson was insured by Farm Bureau, and the car he was driving was insured by Shelter. Having been injured in the accident, Roberson filed a lawsuit seeking damages from both insurance companies under their UM provisions. Shelter settled the matter with Roberson, obtained a release for itself and Farm Bureau in exchange for $6000, and left it for the trial court to decide the respective liabilities of the two insurers.

Shelter filed a motion for summary judgment claiming that both it and Farm Bureau provided UM coverage for the accident. Shelter argued that its policy provided that when a claim is covered by UM insurance by another company, then Shelter's coverage would apply only as excess over all other such insurance. Further, Shelter's policy coverage would be applied in a pro rata manner if it were impossible to reconcile the provisions of other applicable policies. Shelter's policy provides uninsured-motor-vehicle-liability coverage in Part IV-Coverage E as follows:

> Subject to all conditions, exclusions, and limitations of our liability, stated in this policy, we will pay damages that an Insured, or an Insured's legal representative, is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of an occurrence that arose out of the ownership or use of that uninsured motor vehicle.
>                                    . . .
> Insured means an individual included in one of the following categories:
> CATEGORY A:
> (a) You;
> (b) Relatives; and
> (c) Individuals listed in the Declarations as an "additional listed insured" who do not own a motor vehicle, and whose spouse does not own a motor vehicle.
> CATEGORY B:

> Any individual who is not included in Category A, while he or she is using the described auto with permission or general consent.
>
> . . .
>
> If a claim covered by Coverage E of this policy is also covered by uninsured motorist insurance issued by a company other than . . . Shelter . . . the coverage under this policy will apply only as excess over all such other insurance. Coverage E will then apply only in the amount that its limit of liability exceeds the combined limits of all such other uninsured motorist insurance.
>
> If it is impossible to reconcile the provisions of all applicable policies to determine the order in which their benefits apply, the limits of Coverage E will be prorated with all such other policies, based on the applicable limits of each, up to the combined limits of all such policies.

Shelter argued that the issue was whether its UM policy should be "applied to the accident as excess or at least in a pro-rata manner."

> Farm Bureau's UM policy states as follows:
>
> If you sustain bodily injury while occupying an auto not owned by you or any covered person, this coverage will be:
>
> a.  excess over any uninsured motorist coverage which applies to the auto as primary coverage; but
> b.  only for the amount by which this coverage exceeds the primary coverage.

Shelter claimed that Farm Bureau's argument was that its policy was excess over the Shelter policy, while Shelter maintained that its liability was pro rata due to the irreconcilable language between the two policies. Shelter argued that the issue turned on the interpretation of the two polices. It asked the trial court that, if it could not find that Shelter's coverage was excess, it enter an order requiring Farm Bureau to reimburse Shelter for its pro rata share of the accident.

Farm Bureau filed its motion for summary judgment claiming that primary coverage follows the vehicle and not the person. Therefore, Farm Bureau asked that Shelter's claims

SLIP OPINION

be dismissed and/or for a declaration that Shelter's UM coverage was primary. In support of its argument that it held no liability for coverage, Farm Bureau relied on Arkansas Code Annotated section 23-89-403 (Repl. 2014), the UM statute, and section 23-89-215, which provides that an automobile's liability-insurance policy is primary when the motor vehicle is driven by an insured or any other person not excluded from coverage under the policy, with the permission of an insured. Farm Bureau claimed that, because UM coverage is required along with liability insurance on an automobile registered in Arkansas, it is implied in the statute that UM coverage, like liability insurance, follows the automobile.

Farm Bureau relied on *Shelter Mutual Insurance Company v. Williams*, 69 Ark. App. 35, 9 S.W.3d 545 (2000) (*Shelter Mutual*), for the proposition that, under a standard automobile policy, primary liability is generally placed on the insurer of the owner of the automobile involved, and the policy providing the nonownership coverage is secondary. Farm Bureau argued that the issue of primacy is determined by who insured the vehicle actually involved in the accident. Thus, Farm Bureau urged the trial court to find that Shelter held primary coverage, thereby negating Farm Bureau's liability under the terms of its policy, as the total amount paid was less than Shelter's policy limits.

A summary-judgment hearing was held on January 11, 2016. The trial court found that the policies provided by Shelter and Farm Bureau both provided UM coverage for the benefit of Roberson and should equally share in the settlement that was paid to him by Shelter. Farm Bureau was ordered to reimburse Shelter in the amount of $3000 for its one-half share of the settlement. The order was filed on February 1, 2016, and this appeal and cross-appeal timely followed.



## II. *Statement of Law*

A circuit court grants summary judgment when a party is entitled to judgment as a matter of law. *Humphries v. Nationwide Mut. Ins. Co.*, 97 Ark. App. 125, 127, 245 S.W.3d 156, 158 (2006) (citing *Lewis v. Mid-Century Ins. Co.*, 362 Ark. 591, 210 S.W.3d 113 (2005)). Whether the language of the policy is ambiguous is a question of law to be resolved by the court. *Harasyn v. St. Paul Guardian Ins. Co.*, 349 Ark. 9, 75 S.W.3d 696 (2002). An issue involving a question of law is reviewed de novo and is given no deference on appeal. *Travelers Cas. & Surety Co. of America v. Cummins Mid-South, LLC*, 2015 Ark. App. 229, 460 S.W.3d 308. If the language of an insurance policy is unambiguous, we give effect to the policy's plain language without resorting to the rules of construction, but if the language is ambiguous, we construe the policy liberally in favor of the insured and strictly against the insurer. *Humphries, supra.* Policy language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation. *Id.*

This court stated that

> [i]n Arkansas, insurance policies are to be interpreted like other contracts. *Agricultural Ins. Co. v. Ark. Power & Light Co.*, 235 Ark. 445, 361 S.W.2d 6 (1962). The language in an insurance policy is to be construed in its plain, ordinary, and popular sense. *Tri-State Ins. Co. v. Sing*, 41 Ark. App. 142, 850 S.W.2d 6 (1993). Contracts of insurance should receive a practical, reasonable, and fair interpretation consonant with the apparent object and intent of the parties in light of their general object and purpose. *First Financial Ins. Co. v. Nat'l Indemnity Co.*, 49 Ark. App. 115, 898 S.W.2d 63 (1995). If there is no ambiguity, and only one reasonable interpretation is possible, it is the duty of the courts to give effect to the plain wording of the policy. *See Western World Ins. Co. v. Branch*, 332 Ark. 427, 965 S.W.2d 760 (1998).

*Foster v. Farm Bureau Mut. Ins. Co.*, 71 Ark. App. 132, 133, 27 S.W.3d 464, 465 (2000).

The law regarding construction of an insurance contract is well settled. Once it is determined that coverage exists, it then must be determined whether the exclusionary language within the policy eliminates the coverage. *Norris v. State Farm Fire & Cas. Co.*, 341 Ark. 360, 16 S.W.3d 242 (2000). Exclusionary endorsements must adhere to the general requirements that the insurance terms must be expressed in clear and unambiguous language. *Castaneda v. Progressive Classic Ins. Co.*, 357 Ark. 345, 166 S.W.3d 556 (2004).

### III. *Competing Insurance Clauses*

Arkansas Code Annotated section 23-89-215 provides that the liability-insurance policy covering a motor vehicle is primary when the motor vehicle is driven by an insured or any other person with the permission of an insured. Arkansas Code Annotated section 23-89-403(a)(1) provides that no automobile-liability insurance may be issued in this state unless coverage is provided for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles.

Shelter argues that the trial court correctly determined that Farm Bureau's policy issued to Roberson provided UM coverage for the accident. Shelter maintains that Arkansas law does not mandate that Shelter has primary coverage, arguing that it cannot be inferred from reading the statutes cited by Farm Bureau that the legislature intended that UM coverage should be treated the same as liability coverage and follow the automobile. Shelter asserts that, because section 23-89-215 does not specifically state that it applies to UM coverage and section 23-89-403 contains no language that sets forth a priority of coverage, then the priority of coverage rests with the terms of the insurance policies at issue, not the statute governing the issuance of UM coverage. Shelter contends that section 23-89-403

does not address whether the coverage should follow the car versus following the person; therefore, it argues that this court cannot interpret the statute to address an issue that is clearly not contained therein, and the terms of the policy should dictate.

Shelter further contends that its policy mandates that its coverage is excess under the facts of this case and as such is in direct conflict with the Farm Bureau policy. Shelter claims that if there is more than one UM policy applicable to an incident, and those policies cannot be reconciled, then its policy provides pro rata coverage. Shelter asserts that Farm Bureau's argument is that its policy is excess over the Shelter policy because Shelter's policy is statutorily deemed primary. Shelter contends that Farm Bureau's policy coverage is excess only if the coverage applied to the auto is "primary coverage." Shelter argues that if Farm Bureau believed that every policy maintained on the automobile was the "primary coverage," the provision in its policy would have stated "excess over any uninsured motorist coverage which applies to the auto." Shelter maintains that Farm Bureau's policy would not have contained the superfluous language "which applies to the auto as primary coverage."

Shelter contends that insurance policies are to be interpreted like other contracts and are to be construed in their plain, ordinary, and popular sense. *Foster, supra.* Shelter claims that the first question to be answered is whether its policy is deemed primary. Shelter argues that its policy is primary only if there is no other UM policy in existence. It relies heavily on the approval of its policy language by the Arkansas State Insurance Commission, and it claims that the general rule is that policy language approved by the Commission has precedential authority and generally provided with weight when there has been no

reduction in overall coverage provided to the insured. *Shelter Gen. Ins. Co. v. Williams*, 315 Ark. 409, 867 S.W.2d 457 (1993).

Shelter contends that Farm Bureau admittedly maintained a policy of insurance containing UM coverage that was issued to Roberson. Shelter argues that *Shelter Mutual*, *supra*, which was cited by Farm Bureau for the proposition that primary coverage absolutely rests with the automobile, is distinguishable because the matter there involved an insured's attempt to stack underinsured-motorist coverage. Shelter also contends that *Shelter Mutual* merely stated that, generally, coverage is placed primarily on the insurer of the automobile, but it did not set forth that an insured cannot consent to policy language that mandates coverage be excess or distributed in a pro rata manner with another insurer for the same accident. Further, Shelter notes that even though it was involved in both cases, it has changed its policy language since *Shelter Mutual*, which revolved around Shelter's antistacking language. Here, Shelter contends that there is no antistacking language at issue.

Shelter contends that its current policy clearly states that if there is other UM coverage applicable to the incident, then its coverage is excess. Shelter also contends that Farm Bureau's policy maintains that if there is other coverage that is considered "primary" then its coverage is excess. Shelter argues that, because Farm Bureau did not define the term "primary," Farm Bureau is relying on the general proposition that the coverage on the automobile is generally primary. However, Shelter argues that the UM statute does not mandate any specific allocation of coverage as the liability statutes require. Further, it argues that Shelter's policy language, which mandates that its coverage is not applicable when other

similar insurance applies to the incident, defeats the general proposition that coverage on the automobile is "generally" primary.

Farm Bureau contends that the trial court erred in holding that there was coverage under its policy. We agree with Farm Bureau's argument that primary automobile-insurance coverage follows the vehicle, not the person. By reading the applicable statutes together—Arkansas Code Annotated section 23-89-215 and section 23-89-403(a)(1)—it can be inferred that the legislature intended that UM coverage, like liability insurance, follows the automobile because it requires that UM coverage be offered on every liability policy. Farm Bureau contends that, because the legislature explicitly deviated from the general rule by providing that no-fault benefits follow the person, *see* Arkansas Code Annotated section 23-89-204(b), it is clear that the legislature intended that auto insurance, other than no-fault benefits, follows the vehicle rather than the person.

In *Shelter Mutual*, *supra*, this court considered the question of whether an insurance policy issued by Shelter prevented stacking of underinsured-motorist coverages. There, the appellee's son had died in an automobile accident where he was the passenger, and appellee sought underinsured motorist coverage from his policy with Shelter. *Shelter Mutual*, 69 Ark. App. at 36–37, 9 S.W.3d at 546–47. Shelter denied liability under its policy's underinsured-motorist provision that contained an "other insurance" clause barring recovery. *Id*. at 37, 9 S.W.3d at 547. The question turned on whether the term "primary" contained in the underinsured-motorist clause was ambiguous. *Id*. at 41, 9 S.W.3d at 549. Shelter argued that the term was not ambiguous because it had only one reasonable construction—that, in

the context of underinsured-motorist coverage, the "primary" coverage is that provided for the automobile in which the insured was riding. *Id*. We agreed and stated as follows:

> As a fundamental principle of insurance law, under a standard automobile policy, primary liability is generally placed on the insurer of the owner of the automobile involved and the policy providing the nonownership coverage is secondary. 7A AM.JUR.2D Automobile Insurance § 543 (1997). We recognized this basic rule in *State Farm Fire & Cas. Co. v. Amos*, [32 Ark. App. 164, 798 S.W.2d 440 (1990)]. Additionally, we note that this "other insurance" clause is contained within the [underinsured-motorist] endorsement to the policy. Hence, it is clear that State Farm's coverage was primary and [Shelter's] was secondary. Therefore, the only reasonable construction of this provision of the policy is that it prohibits the stacking of this coverage with that provided by State Farm to the vehicle in which [appellee's son] was riding.

*Id*. at 41–42, 9 S.W.3d at 550. We agree with Farm Bureau's contention that the same logic should apply here.

In its reply brief, Farm Bureau cites *First Security Bank of Searcy v. Doe*, 297 Ark. 254, 760 S.W.2d 863 (1988), where the Arkansas Supreme Court concluded that Arkansas Code Annotated section 23-89-403, which provides for UM coverage, expressed the intent of the General Assembly to include in UM coverage the persons included in liability coverage. *First Security Bank* cites with approval *Crawford v. Emcasco Insurance Company*, 294 Ark. 569, 572, 745 S.W.2d 132, 134 (1988), where the court disagreed with the appellant's argument that Arkansas's UM statute provided for personal insurance as opposed to vehicle coverage; instead, the court read § 23-89-403 to provide "*automobile liability insurance coverage with respect to* the ownership, maintenance, or use of *any motor vehicle* registered or principally garaged in this state." Farm Bureau contends that the Arkansas Supreme Court's interpretation of section 23-89-403 is dispositive of this case—that coverage on vehicles

involved in an accident is primary unless specifically stated by the legislature. As such, Farm Bureau argues there is no coverage under its policy for this claim.

We agree, and it follows that Shelter insured the vehicle involved in this accident, and, thus, its policy provided the primary UM coverage available to Roberson. The Shelter policy provides that if a UM claim is also "covered" by another policy, its coverage is secondary. Roberson's claim is not covered under Farm Bureau's policy because he was injured in a nonowned auto that had primary coverage. Moreover, the UM claim was settled for less than Shelter's limits and, therefore, Shelter's was the only policy applicable to Roberson's claim.

IV. *Cross-Appeal*

On cross-appeal, Shelter argues that, while the trial court correctly determined there was coverage under the Farm Bureau policy, it erred in finding that the coverage should be divided equally instead of by a pro rata distribution as set forth in Shelter's policy. Because we have reversed the trial court's determination that Farm Bureau's policy provided coverage for the UM claim, Shelter's argument on cross-appeal is moot.

Reversed on direct appeal; cross-appeal rendered moot.

KINARD and HIXSON, JJ., agree.

*Turner Law Firm, P.A.*, by: *Andy L. Turner* and *Ben C. Hall*, for appellant.

*Matthew, Sanders & Sayes*, by: *Roy Gene Sanders*, for appellee.